# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | § § § | |
| PLAINTIFF, | § § | |
| | § | CIVIL ACTION NO. 3:15-CV-03157-D |
| VS. | § § | |
| ACCENTCARE, INC., | § § | |
| DEFENDANT. | § § | |

## BRIEF IN SUPPORT OF DEFENDANT'S
## MOTION FOR SUMMARY JUDGMENT

Respectfully Submitted,

**JOHN L. ROSS[1]**
Texas State Bar No. 17303020
**CHANTEL L. LEE**
Texas State Bar No. 24081001

**THOMPSON, COE, COUSINS & IRONS, L.L.P.**
700 North Pearl Street, Suite 2500
Dallas, Texas 75201
Telephone:(214) 871-8206 (Ross)
Telephone:(214) 871-8242 (Lee)
Fax:          (214) 871-8209
Email:      jross@thompsoncoe.com
Email:      clee@thompsoncoe.com

**ATTORNEYS FOR DEFENDANT**

---

[1] Board Certified in Labor & Employment Law and Civil Trial Law by the Texas Board of Legal Specialization.

TABLE OF CONTENTS

| | PAGE |
|---|---|
| INDEX OF AUTHORITIES | iii |
| INTRODUCTION | 1 |
| OPERATIVE FACTS | 2 |
| A. THE PARTIES IN INTEREST | 2 |
| B. BEASLEY'S EMPLOYMENT | 2 |
| C. BEASLEY'S PATTERN OF ABSENTEEISM | 3 |
| D. BEASLEY DISCLOSES HER BIPOLAR/ADHD CONDITIONS AND SEEKS INDEFINITE LEAVE | 4 |
| 1. Version 1: The Information Provided by Beasley to AccentCare | 4 |
| 2. Version 2: Beasley's Deposition Version | 8 |
| 3. Version 3: Beasley's Documented Medical Records | 8 |
| SUMMARY JUDGMENT STANDARDS | 10 |
| ARGUMENT | 11 |

I.

AS A MATTER OF LAW, ADEQUATE TIME FOR DISCOVERY HAS PASSED AND THE EEOC HAS NO EVIDENCE TO ESTABLISH ANY OF THE THREE ELEMENTS OF A *PRIMA FACIE* FAILURE-TO-ACCOMMODATE CASE, OR ANY EVIDENCE OF DAMAGES ARISING FROM ACCENTCARE'S REFUSAL TO GRANT INDEFINITE LEAVE. SPECIFICALLY, THE EEOC HAS NO ADMISSIBLE SUMMARY JUDGMENT EVIDENCE TO ESTABLISH *EITHER* THAT BEASLEY WAS MEDICALLY TAKEN *OFF* WORK STATUS ON JULY 8, 2013, *OR* THAT SHE WAS MEDICALLY *RETURNED* TO WORK STATUS ON JULY 12, 2013.   11

A. APPLICABLE LAW—*PRIMA FACIE* CASE   11

B. NO ADMISSIBLE EVIDENCE THAT AN ACCOMMODATION—*I.E.*, ADDITIONAL LEAVE—WAS NECESSARY IN ORDER FOR BEASLEY TO PERFORM THE ESSENTIAL FUNCTIONS OF HER JOB   12

PAGE

C. NO EVIDENCE OF FIRST ELEMENT—THAT BEASLEY WAS A QUALIFIED
   INDIVIDUAL WITH A DISABILITY ON THE DATE OF TERMINATION,
   JULY 9, 2013 ............................................................................ 13

   1. The EEOC's Complaint Conclusively Negates the First Element ........ 13

   2. No Admissible Evidence Beasley Was Ever Returned to Work Status ... 16

D. NO EVIDENCE OF SECOND ELEMENT—EVIDENCE OF CONSEQUENTIAL
   LIMITATIONS OF BEASLEY'S CONDITION ............................................. 17

E. NO EVIDENCE OF THIRD ELEMENT—THAT ACCENTCARE FAILED TO
   MAKE A REASONABLE ACCOMMODATION ............................................. 18

F. NO EVIDENCE BEASLEY SUFFERED ANY DAMAGES AS A RESULT OF
   THE ALLEGED FAILURE TO PROVIDE THE REQUESTED ACCOMMODATION ... 20

II.

ADEQUATE TIME FOR DISCOVERY HAS PASSED AND THE EEOC
HAS FAILED TO PRODUCE ANY EVIDENCE OF THE SECOND OR
FOURTH ELEMENT OF A PRIMA FACIE CASE OF DISABILITY
DISCRIMINATION. INDEED, THE SUMMARY JUDGMENT
EVIDENCE CONCLUSIVELY NEGATES THOSE ELEMENTS. ............... 21

A. APPLICABLE LAW—PRIMA FACIE CASE ............................................. 21

B. NO EVIDENCE OF SECOND ELEMENT—THAT BEASLEY WAS A
   QUALIFIED INDIVIDUAL WITH A DISABILITY ON THE DATE OF
   TERMINATION, JULY 9, 2013 ............................................................. 21

C. NO EVIDENCE OF FOURTH ELEMENT ............................................. 21

III.

ALTERNATIVELY, ACCENTCARE IS ENTITLED TO SUMMARY
JUDGMENT ON THE EEOC'S DISABILITY DISCRIMINATION
CLAIM BECAUSE, AS A MATTER OF LAW, ADEQUATE TIME
FOR DISCOVERY HAS PASSED AND THE EEOC HAS FAILED
TO PRODUCE ANY EVIDENCE SUFFICIENT TO RAISE A
GENUINE ISSUE OF MATERIAL FACT ON THE ISSUE OF PRETEXT. 22

CONCLUSIONS AND REQUESTED RELIEF ............................................. 25

INDEX OF AUTHORITIES

PAGE(S)

**CASES:**

*Abarca v. Metro. Transit Auth.*,
   404 F.3d 938 (5th Cir.2005)                                    22

*Allen v. Babcock & Wilcox Tech. Services Pantex, LLC*,
   2013 WL 5570192 (N.D. Tex. Oct. 9, 2013)                       15

*Amsel v. Tex. Water Development Board*,
   2012 WL 913676 (5th Cir. March 19, 2012)                       15

*Anderson v. Inland Paperboard & Packaging*,
   11 Fed. App'x. 432 (6th Cir. 2001)                             16-17, 19

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986)                                            10

*Aryain v. Wal-Mart Stores Texas, L.P.*,
   534 F.3d 473 (5th Cir. 2008)                                   24

*Bernard v. EDS Noland Episcopal Day Sch.*,
   62 F. Supp. 3d 535 (W.D. La. 2014)                             15, 18

*Bryant v. Compass Group USA, Inc.*,
   412 F.3d 471 (5th Cir. 2005), *cert. denied*, 546 U.S. 1090 (2006)   22

*Campbell v. Sonat Offshore Drilling, Inc.*,
   979 F.2d 1115, 1119 (5th Cir. 1992)                            15

*Carmona v. Sw. Airlines Co.*,
   604 F.3d 848 (5th Cir. 2010)                                   14

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986)                                            10, 11

*Christianburg Garment Co. v. EEOC*,
   434 U.S. 412 (1978)                                            1

*Clark Co. Sch. Dist. v. Breeden*,
   532 U.S. 268 (2001)                                            24

PAGE(S)

*Crews v. Dow Chemical Co.,*
    287 Fed. App'x. 410 (5th Cir. 2008)                                    15

*Crow v. McElroy Coal Co.,*
    290 F.Supp.2d 693 (N.D. W.Va. 2003)                                    17

*Dark v. Houston Meth. San Jacinto Hosp.,*
    2016 WL 2770545 (S.D. Tex. May 12, 2016)                               18

*Delaval v. PTech Drilling Tubulars, LLC,*
    824 F.3d 476 (5th Cir. 2016)                                           18, 23

*Douglass v. United Servs. Auto. Assoc.,*
    79 F.3d 1415 (5th Cir. 1996)                                           24

*Eason v. Thaler,*
    73 F.3d 1322 (5th Cir. 1996)                                           11

*Feist v. La., Dep't of Justice, Office of the Atty. Gen.,*
    730 F.3d 450 (5th Cir. 2013)                                           14

*Fitzgerald v. Corrections Corp.,*
    403 F.3d 1134 (10th Cir. 2005)                                         23

*Forsyth v. Barr,*
    19 F.3d 1527 (5th Cir.), *cert. denied,* 513 U.S. 871 (1994)          11

*Fuentes v. Krypton Solutions, LLC,*
    2013 WL 1391113 (E.D. Tex. April 4, 2013)                             18

*Gantt v. Wilson Sporting Goods Co.,*
    143 F.3d 1042 (6th Cir. 1998)                                          17

*Gohl v. Livonia Pub. Schools,*
    2016 WL 4698279 (6th Cir. Sept. 8, 2016)                              23

*Gordon v. Acosta Sales & Mktg., Inc.,*
    622 Fed. App'x. 426 (5th Cir. 2015)                                    12

*Goyal v. Goodman Networks, Inc.,*
    015 WL 2236665 (N.D. Tex. May 13, 2015)                               24

*Gross v. FBL Fin. Servs., Inc.,*
    557 U.S. 167 (2009)                                                    23

iv

PAGE(S)

*Ham v. Lopez,*
    2002 WL 31396066 (W.D. Tex. Sept. 26, 2002)                    13

*Harris v. Dallas County Hosp. Dist.,*
    2016 WL 2914847 (N.D. Tex. May 19, 2016) (Fitzwater, J.).      11, 12, 21

*Hester v. Williamson County,*
    2013 WL 4482918 (W.D. Tex. Aug. 21, 2013)                      20

*Hillmann v. City of Chicago,*
    2016 WL 4437609 (7th Cir. Aug. 23, 2016)                       23

*Hood v. City of Cleveland,*
    2011 WL 533676 (N.D. Miss. Feb. 15, 2011)                      13

*Hutson v. McDonnell Douglas Corp.,*
    63 F.3d 771 (8th Cir. 1995)                                    25

*Islamic Ass'n of DeSoto, Tex., Inc. v. Mortg. Elec. Regis. Sys., Inc.,*
    2013 WL 169229 (N.D. Tex. Jan. 16, 2013) (Fitzwater, J.)       11

*Kitchen v. Summers Continuous Care Center, LLC,*
    552 F.Supp.2d 589 (S.D. W.Va. 2008)                            17

*Lewis v. University of Maryland,*
    2012 WL 5193820 (D. Md. Oct. 18, 2012)                         17

*Little v. Liquid Air Corp.,*
    37 F.3d 1069 (5th Cir. 1994)                                   11

*Martinez v. Bally's La., Inc.,*
    244 F.3d 474 (5th Cir. 2001)                                   15, 16

*Matsushita Elec. Indus. Co. v. Zenith Radio,*
    475 U.S. 574 (1986)                                            11

*McDonnell Douglas v. Green,*
    411 U.S. 729 (1973)                                            22

*McInnis v. Alamo Comm. College Dist.,*
    207 F.3d 276 (5th Cir. 2000)                                   21

PAGE(S)

*Miller v. Metrocare Services,*
    2015 WL 477233 (N.D. Tex. Feb. 5, 2015) (Fitzwater, J**.**),
    *aff'd*, 809 F.3d 827 (5th Cir.), *cert. denied*, 136 S. Ct. 2463 (2016)    12, 23

*Owens v. Calhoun Cty. Sch. Dist.*,
    546 Fed. App'x. 445 (5th Cir. 2013)    23-24

*Pickard v. Potter,*
    2003 WL 21448593 (N.D. Tex. Mar. 24, 2003)    16

*Price v. Marathon Cheese Corp.*,
    119 F.3d 330 (5th Cir. 1997)    24

*Reeves v. Dollar General Corp.*,
    1999 WL 274587 (5th Cir. Apr. 23, 1999)    14

*Ripple v. Marble Falls Indep. Sch. Dist.*,
    99 F. Supp. 3d 662 (W.D. Tex. 2015)    13, 16, 17, 19

*Rogers v Int'l Marine Terminals, Inc.*,
    87 F.3d 755 (5th Cir. 1996)    18

*Salem v. Houston Methodist Hosp.*,
    2015 WL 6618471 (S.D. Tex. Oct. 30, 2015)    18

*Scott v. Turner Indus. Grp., LLC,*
    2011 WL 5023842 (M.D. La. Oct. 19, 2011)    13

*Scott v. Univ. of Mississippi*,
    148 F.3d 493 (5th Cir. 1998)    4, 25

*Shirey v. Pepperidge Farm Inc.*,
    2002 WL 31233243 (N.D. Ohio Sept. 25, 2002)    19

*Strong v. Univ. Healthcare Sys., LLC,*
    482 F.3d 802 (5th Cir. 2007)    22, 24

*Thomas v. Greystar Mgmt. Services, L.P.*,
    2014 WL 2519165 (N.D. Tex. June 4, 2014) (Fitzwater, J.)    23

*Univ. Tex. S.W. Med. Ctr. v. Nassar*,
    133 S.Ct. 2417 (2013)    23

PAGE(S)

*Will v. American Airlines, Inc.*,
    2008 WL 2570728 (5th Cir. June 25, 2008)          14-15

*Yee v. Baldwin-Price*,
    2008 WL 4559856 (N.D. Tex. Oct. 9, 2008),
    *aff'd*, 325 Fed. App'x. 375 (5th Cir. 2009)          22

**OTHER AUTHORITIES:**

42 U.S.C. § 12112(b)(5)(A).          12

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | § § § | |
| PLAINTIFF, | § § | |
| | § | CIVIL ACTION NO. 3:15-CV-03157-D |
| VS. | § § | |
| ACCENTCARE, INC., | § § | |
| DEFENDANT. | § | |

## INTRODUCTION

This is a disability discrimination lawsuit brought by the EEOC on behalf of Alisia Beasley ("Beasley"). The EEOC contends AccentCare violated the AMERICANS WITH DISABILITIES ACT ("ADA") by failing to afford Beasley—a probationary employee with a checkered absentee record—an additional, indefinite amount of leave when Beasley was allegedly taken off work status by her psychiatrist and by terminating her on July 9, 2013, after learning of Beasley's bipolar and ADHD condition.

The EEOC's contentions are, as a matter of law, without merit. In fact, the EEOC's contentions are so demonstrably devoid of merit and contrary to established precedent, its two-year long pre-suit administrative "investigation" so slipshod and incompetent, and its continued prosecution of the lawsuit despite the lack of *any* admissible evidence to support the essential elements of the claims so frivolous and unreasonable, that AccentCare is entitled to recover defense attorney fees, even under the heightened standards of *Christianburg Garment Co. v. EEOC*, 434 U.S. 412 (1978).[2]

---

[2] *See* separately filed *Motion for Attorney Fees*.

1

## OPERATIVE FACTS

**A. THE PARTIES IN INTEREST:**

AccentCare provides post-acute home healthcare services. Services provided include, *e.g.*, skilled home healthcare, personal care services, hospice care, private duty nursing, and case management. http://accentcare.com/services/

Beasley is a (now) 31 year old black female with a long history of suffering from bipolar disorder and other mental and psychological conditions, including, *inter alia*, depression, post-traumatic stress disorder as a result of "a rather traumatic childhood," Attention Deficit Hyperactivity Disorder, impulsivity, suicidal ideation and at least one suicide attempt, and "manic symptomology at times signifying . . . full mania." Docket No. 18-1. *See also Appendix*, pp. 1-7.

**B. BEASLEY'S EMPLOYMENT:**

Beginning **April 24, 2013**, Beasley accepted an offer from AccentCare to work as an IT Help Desk Analyst, providing technical advice and guidance to customers using company hardware and software programs, and troubleshooting IT problems. *Appendix*, pp. 8-10. Beasley's supervisor was Dena Besh ("Besh"), IT Customer Support Manager. *Id*., pp. 9 and 180-81 (Trans. pp. 21-22). Beasley's normal shift was 7:30 a.m. to 4:30 p.m. *Id*., p. 46. Beasley was an at-will employee and the first 90 days of employment were probationary. *Id*., p. 20. When she began employment, Beasley received a copy of the employee handbook and acknowledged receiving and reading it. *Id*., pp. 11 and 181 (Trans. pp. 22-23). The handbook set forth Accent-Care's Punctuality and Attendance policies, *id*., pp. 21-22,[3] and EEO/anti-discrimination policies. *Id*., pp. 206-214.

---

[3] *Inter alia*: "Excessive absenteeism or tardiness (whether excused or not) affects our clients as well as your co-workers. Continuing patterns of absences or tardiness may warrant corrective action, up to and including, termination."

2

### C. BEASLEY'S PATTERN OF ABSENTEEISM:

On **Monday, June 3, 2013**, Beasley left work early at 11:00 a.m. *Id.*, pp. 54, 216.

On **Friday, June 7, 2013**, Beasley took the day off, reportedly because of an upset stomach. *Id.*, pp. 37, 54, 182 (Trans. p. 32), 216.

On **Thursday, June 20, 2013**, Beasley left work early to take her daughter to the doctor. *Id.*, pp. 39, 40, 182 (Trans. p. 33), 216.

On **Friday, June 21, 2013**, Beasley logged out early at 3:02 p.m. (*id.*, p. 216), apparently to attempt to register her daughter at school. *See, id.*, p. 41.[4]

At **5:43 a.m., Monday, June 24, 2013**—less than two hours before her scheduled start time—Beasley emailed Besh, to inform Besh that she would be taking the day off to register her daughter at *another* school. *Id.*, pp. 41, 54, 182 (Trans. p. 33). Besh responded (*id.*, p. 41):

> This should have been planned better.....it is Monday and missing one person hits us pretty hard. Let's talk when you get back about the amount of time off you are taking.

Beasley replied, freely acknowledging that she had been taking an "unusual" amount of personal time off (*id.*, p. 42; emphasis added):

> I respect your view on that... However me being able to plan that my daughter would need to be switching schools after just a day was the last thing I expected to have to plan for, especially after paying for it and only getting a day.
>
> *As the things that have come up have been very unexpected... Making the amount of time I have missed thus far unusual for me*... I will in the future do my best to handle my personal [*sic*] life outside of work hours.

Later in the day, Beasley further replied (*id.*, p. 43): "Despite being at the hospital more than half the day, I was able to get the school situation taken care of with my daughter. I will see you in the am."

Accordingly, on **Tuesday, June 25, 2013**, Besh orally counseled Beasley—still a 90-day probationary employee—regarding paid time off, "first level competencies," and other matters.

---

[4] Beasley email Monday, June 24, 2013 (emphasis added): "I will be out today. I will be visiting schools to find my daughter a new school. *The one I took her to Friday was horrible . . . .*"

3

*Id.*, pp. 44, 46-47, and 183 (Trans. p. 34). Late that afternoon, Beasley emailed Besh (*id.*, p. 45; emphasis added):

> Tammie[5] is being released from the hospital today. Her blood pressure is down, however until she can get it stable she will need to take blood pressure meds to help manage it.[6]
>
> *Again I am so very sorry for my actions today. I will be back at work tomorrow well rested with my head in the game....* I hope you have a nice evening.

### D. BEASLEY DISCLOSES HER BIPOLAR/ADHD CONDITIONS AND SEEKS INDEFINITE LEAVE:

There are three different versions of the events occurring between July 8-12, 2013. However, as explained further, below and in the *Argument*, for purposes of summary judgment, it matters not which version is true. Under any of the three scenarios, AccentCare is entitled to summary judgment.

### 1. *Version 1: The Information Provided by Beasley to AccentCare:*[7]

At **7:33 a.m., Monday, July 8, 2013**—*after* Beasley should have already reported for work[8]—Beasley emailed Besh (*Id.*, p. 48; emphasis added):

> I will be out of the office today, I'm not sure if I'm going to be able to come in tomorrow. *I'm needing to get in with my psychiatrist asap, as I've been out of meds for my Bipolar and adult ADHD disorders* now for almost 2 weeks. I missed my appointment

---

[5] Beasley's same-sex wife.

[6] Beasley acknowledges having spent half the day off on June 25, 2013, at the hospital attending to her ill wife. *Id.*, p. 183 (Trans. pp. 35-36)

[7] As this version is indisputably based on the information provided to AccentCare *by Beasley*, it matters not whether the information Beasley provided is true. As a matter of law, AccentCare was entitled to rely on the information provided by Beasley. *See, e.g., Scott v. Univ. of Mississippi*, 148 F.3d 493, 509–510 (5th Cir. 1998) ("Even if evidence suggests that a decision was wrong, we will not substitute our judgment [for the employer's.] Such disputes do not support a finding of discrimination and have no place in front of a jury.").

[8] *See Appendix*, p. 22 (emphasis added): "If you are unable to report to work, call your supervisor (or designated individual). If you are in a position which has a specific start time, *e.g.*, 8:00 a.m., you are required to call your supervisor (or designated individual) *at least one (1) hour (or sooner, if possible) in advance of your scheduled start time.*"

4

on June 26th, out of fear of loosing [*sic*] my job because it was scheduled during my work hours.

My doctor has very limited evening appointments which are booked months in advance, which is why I've been unable to see him after work. I've been trying to manage on my own, which has not worked.

I am going to see if I can get in today or tomorrow to see him.

Beasley admits that this email was the first she had disclosed her bipolar or ADHD conditions to anyone at AccentCare. *Id.*, p. 181 (Trans. pp. 23-24).

At **5:31 p.m.**, Beasley emailed Besh (*Id.*, p. 52; emphasis added):

I was able to see the doctor today, he has me off tomorrow *so that I can have some test done. As long as everything comes back normal I will be back on Wednesday.*[9]

However, at **10:04 a.m.**, the next morning, **Tuesday, July 9th**, Beasley emailed Kimberly Nelson ("Nelson"), the HR Operations Manager (*id.*, p. 53; emphasis added):

Due to medical conditions I will be out of office *for an extended amount of time. As of now my doctor has not provided me with a return to work date*. I understand that I am not eligible for FMLA,[10] however I am unsure if I'm eligible for another type of leave *or short term disability*. Will you please tell me what my options are?

Thus, despite Beasley's prediction Monday afternoon that she would be back to work on Wednesday "*[a]s long as everything comes back normal*" from her "test," Beasley informed the company she would "be out of office *for an extended amount of time. As of now my doctor has not provided me with a return to work date*." *Id. See also*, *id.*, p. 186 (Trans. p. 51):

Q. So as of 10:04 a.m. on July 9th, it's your contention that Dr. Allawala had taken you off work for an extended amount of time?

A. Correct.

. . . Q. Ma'am, in Exhibit 114 you wrote to Kim Nelson at 10:04 a.m. on July 9th that "My doctor has not provided me with a return to work date," true?

---

[9] *See also Appendix*, 185 (Trans. pp. 47-49).

[10] The EEOC admits that Beasley was not eligible for FAMILY AND MEDICAL LEAVE ACT leave. *Appendix*, pp. 175-76.

A. That is correct[.][11]

At **12:09 p.m.**, Beasley also emailed Besh (*id.*, p. 56; emphasis added): "My doctor has taken me off work *for an extended amount of time, he has not provided me with a return to work date*." *See also*, *id.*, p. 187 (Trans. pp. 56-57; emphasis added):

> [Q.] As of 12:09 on July 9th, you had informed both your supervisor, Dena Besh, and the HR person, Kim Nelson, by e-mail that *your doctor had taken you off work for an extended amount of time, true*?
>
> A. By that time I would have let both of them know in some form of a way, *yes*.
>
> Q. (BY MR. ROSS) And by 12:09—or as of 12:09 on July 9th, you would have informed both Ms. Besh and Ms. Nelson *that your doctor had not provided you with a return to work date, true*?
>
> A. I had not been given a return to work date, so *yes, that's true*.

After having received two emails from Beasley stating she would be off work for an indefinite amount of time and had no projected return to work date, Nelson asked to speak with Beasley by phone. *Id.*, pp. 57-58. Beasley promptly called Nelson and, unknown to Nelson, secretly recorded the call. *Id.*, pp. 59-65. During the conversation, Beasley reiterated yet again that she had been taken off work status without any return to work date. *Id.* (emphasis added):

> Kim: So, um, I will, since you're not able to come back to work and basically it would be, we would code the separation of employment *based on your not being able to return to work*.
>
> Alisia: Ok so essentially because I have a medical condition *and I'm not able to return to work* you all are firing me?
>
> Kim: Well, we can't uh, we don't have, as I told you since you're not covered under FMLA and there's not really a medical leave available for employees who've been here such a short time.
>
> Alisia: Uh huh
>
> Kim: The only other option was a personal leave and based on the needs of the position and they need to have someone in that role, *we can't, you know, just leave it open indefinitely*.

---

[11] *Accord Appendix*, p. 194 (Trans. p. 89).

Alisia: Ok, I'm not asking you all to leave it open indefinitely as far as I know, I *may* be able to come back to work on Friday. I have a follow up visit with my doctor on Friday and *so I don't know if I'm going to be able to come back to work on Friday or if it's gonna' be a month from now*, but essentially it still falls back to that because I have a medical condition that's stopping me from coming to work today, then you all are firing me.

Kim: No, it's within the first 90 days of your employment and *you've indicated that you need to be out indefinitely and we are not in a position to hold the position open indefinitely*.

Alisia: I haven't said indefinitely though. *I haven't given you all a timeframe*. As I stated I go back to the doctor on Friday.

. . . Kim: Your email to me earlier, Alisia, was that *you didn't know when you'd be able to return to work*.

Alisia: *Correct* and I go back to the doctor on Friday.

Kim: *So I consider that to be indefinitely*.

Alisia: Well, no, I go back to the doctor on Friday and when I go back to the doctor on Friday, he can either release me *or he can extend it*, but one way or the other regardless if I'm within 90 days or if I'm there a year, you all have the right to let me go whenever because we are in an at-will state. But I'm not letting you all know that I'm, that I'm not gonna' come back at all. *All I'm saying is as of today my doctor has me off*. I go back to work on Monday, I'm sorry, I go back to the doctor on Friday because he put me on medication to see if the medication has helped stabilize me. And *if* it has *then* I will be released to return to work.

Kim: Ok. So you, you go to the, doctor on Friday and then when would you be able to get back to us?

Alisia: *If* he releases me on Friday *then* I'll be back in the office on Monday. You know, just as I . . .

Kim: I mean what time, do you know what time you could give us a call, we could expect to hear back from you on Friday?

Alisia: Oh, yes. My appointment on Friday is at 11:00 a.m. And so right after I leave my doctor's appointment I can call you all and let you know.

Kim: Ok.

Alisia: What his decision is but if either way, you all are gonna' let me go the—versus I guess my thing is versus waiting until Friday and then telling me that we're gonna still separate you, then *I would prefer for you all to tell me that today so that way I know what my next course of action is versus waiting until Friday* and then telling me ["]well

because you've missed this amount of time, we're gonna' let you go because you're within your 90 days.["]

Based on Beasley's repeated representations she had been indefinitely taken off work status and had no return to work date, in a second phone call on the afternoon of July 9, 2013, surreptitiously recorded by Beasley, Nelson and Besh informed Beasley of the company's decision to terminate her employment. *Id.*, pp. 66-68. As part of her final pay, Beasley was paid for 16 hours of accrued paid time off (*id.*, p. 70), even though Beasley had not been charged for the 8 hours of leave she had taken on June 24th. *See*, *id.*, p. 69.

### 2. *Version 2*: Beasley's Deposition Version:

In her deposition, Beasley's account differed from the documentation in some remarkable respects. *Id.*, pp. 185-86 (Trans. pp. 48-53), 192 (Trans. pp. 79-81).

➢ Beasley now claims that on Monday, July 8, 2013, her psychiatrist took her off work status, with a follow up appointment scheduled for Friday, July 12, 2013.

➢ Contrary to her July 8th email to Besh (*id.*, p. 52), "[my doctor] has me off tomorrow[12] so I can have some test done. As long as everything comes back normal I will be back on Wednesday,"[13] Beasley, now, denies having had any medical appointments or tests scheduled for July 9th. *See also Appendix*, pp. 164 (answer, Interrogatory 21(c)) and 172.

➢ Despite the fact Beasley admits never having had any blood tests performed (*id.*, p. 186 [Trans. p. 52]), on July 12, 2013, she claims she saw Dr. Allawala *or someone* in his office—though she can't identify who (*id.*, p. 186,Trans. p. 53)—and was returned to work.

### 3. *Version 3*: Beasley's Documented Medical Records:

Despite the fact that Beasley's allegations of discrimination administratively languished at the EEOC for two years (*see*, *id.*, pp. 71-73, 77-78), *the EEOC never bothered to obtain Dr. Allawala's medical records* before issuing its "cause" determination on August 3, 2015 (*id.*, pp. 92-93), *or before filing suit* on September 29, 2015. *See* AccentCare's separately filed *Motion for Attorney Fees*. Rather, in launching its litigation against AccentCare based on the contentions that Beasley (1) had been taken off work status by Dr. Allawala on July 8, 2013; and (2) had

---

[12] Tuesday, July 9, 2013.

[13] Wednesday, July 10, 2013.

been returned to work status by Dr. Allawala—or *someone*—on July 12, 2013, the EEOC relied exclusively on Beasley's own self-serving contentions and a copy of one page of Dr. Allawala's clinical notes for July 8, 2013, provided to the EEOC by Beasley, *which Beasley had unilaterally redacted, simply because she "just wanted to." Id*., pp. 49, 191 (Trans. p. 77):



The EEOC didn't bother to obtain Dr. Allawala's actual, original, unredacted medical records regarding Beasley <u>*until March 29, 2016*</u>—six months *after* suit was filed. *See, id*., pp. 100, 109, 119-33, 134-159. Dr. Allawala's complete, unredacted medical records regarding Beasley (*id*., pp. 119-159) reflect:

➢ Beasley first saw Dr. Allawala twice in April, 2013.

➢ When Beasley returned to see Allawala on July 8, 2013, the doctor wrote in his notes "Patient is non-compliant with treatment. She returned after 3 months"—*a portion of the medical records which Beasley unilaterally decided to redact. Id*., pp. 130, 156.

➢ Contrary to Beasley's representations to Besh on the morning of July 8th (*id*., p. 48) that she needed to see her "psychiatrist asap, as I've been out of meds for my Bipolar and adult ADHD disorders now for almost 2 weeks," Dr. Allawala noted on July 8 (*id*., pp. 130, 156) "she said she is keep [*sic*] taking the medications regularly . . . Medication has been regularly taken and behavior has been stable and unremarkable."[14]

➢ There is no record of any appointment having been scheduled (and missed) on June 26th, as Beasley represented to Besh (*id*., p. 48).

---

[14] Again, this is a portion of the medical records which Beasley unilaterally redacted before providing the document to the EEOC.

➢ There is no indication that on July 8, 2013, Dr. Allawala took Beasley off work status.[15]

➢ There is no record on July 8th of any "test" having been scheduled for July 9th *or any other date*.

➢ There is no record on July 8th of any follow up appointment having been scheduled for July 12th. In fact, the clinical notes for July 8th state: "[r]eturn [in] 2 weeks, or earlier if needed;" *Id*., pp. 131, 157.

➢ There is no record of any examination or clinical session having taken place on July 12, 2013. To the contrary, the next clinical notes in Dr. Allawala's records after July 8th are for November 14, 2013, and state: "Non-compliant with the treatment came back after for [*sic*] four months" *Id*., pp. 132, 158.[16]

➢ There is no record to indicate that on July 12, 2013, Dr. Allawala or anyone affiliated with his office released Beasley to return to work.

## SUMMARY JUDGMENT STANDARDS

A party is entitled to summary judgment on all or any part of a claim regarding which (1) there is no genuine issue of material fact and (2) the moving party is entitled to judgment as a matter of law. *E.g.*, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Anderson*, 477 U.S. at 256.

If the burden of proof at trial lies with the non-moving party, the movant may either (1) submit summary judgment evidence which conclusively negates the existence of at least one

---

[15] In contrast, in both of the April appointments, Dr. Allawala had, in fact, taken Beasley off work status with Beasley's previous employer and documented it in his records. *See*, *id*., pp, 4, 7, 151, and 155.

[16] In making its "cause" determination and initiating suit, the EEOC also relied on a a on a copy of these clinical notes which Beasley had unilaterally decided to redact because she "just wanted to. I didn't feel it was relevant." *See*, *id*., pp. 74, 195 (Trans. 91).



material element of the opponent's claim or defense, or (2) after adequate time for discovery has passed, identify at least one essential element of the non-movant's claim for which the non-movant has presented insufficient evidence to raise a genuine issue of material fact. *E.g.*, *Celotex*, 477 U.S. at 330. Once the moving party has identified the challenged elements of the non-movant's claims, the burden shifts to the nonmoving party to establish the existence of a genuine issue for trial. *E.g.*, *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 585-7 (1986).

To meet this burden, the non-movant must "identify specific evidence in the record and articulate the 'precise manner' in which that evidence support[s] [its] claim[s]." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994). Mere conclusory allegations, unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient. *E.g.*, *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996); *Islamic Ass'n of DeSoto, Tex., Inc. v. Mortg. Elec. Regis. Sys., Inc.*, 2013 WL 169229, at 7 n.11 (N.D. Tex. Jan. 16, 2013) (**Fitzwater, J.**). "The nonmovant's failure to produce proof as to any essential element of a claim renders all other facts immaterial." *Harris v. Dallas County Hosp. Dist.*, 2016 WL 2914847, at 5 (N.D. Tex. May 19, 2016) (**Fitzwater, J.**). "Summary judgment is mandatory if the nonmovant fails to meet this burden." *Id.*, citing *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1076 (5th Cir. 1994) (*en banc*; *per curiam*).

## ARGUMENT

## I.

**AS A MATTER OF LAW, ADEQUATE TIME FOR DISCOVERY HAS PASSED AND THE EEOC HAS NO EVIDENCE TO ESTABLISH ANY OF THE THREE ELEMENTS OF A *PRIMA FACIE* FAILURE-TO-ACCOMMODATE CASE, OR ANY EVIDENCE OF DAMAGES ARISING FROM ACCENTCARE'S REFUSAL TO GRANT INDEFINITE LEAVE. SPECIFICALLY, THE EEOC HAS NO ADMISSIBLE SUMMARY JUDGMENT EVIDENCE TO ESTABLISH *EITHER* THAT BEASLEY WAS MEDICALLY TAKEN *OFF* WORK STATUS ON JULY 8, 2013, *OR* THAT SHE WAS MEDICALLY *RETURNED* TO WORK STATUS ON JULY 12, 2013.**

**A. APPLICABLE LAW—*PRIMA FACIE* CASE:**

To establish a *prima facie* failure-to-accommodate case the EEOC must prove: (1) Beasley

11

was a qualified individual with a disability; (2) the disability and its consequential limitations were known by AccentCare; and (3) AccentCare failed to make reasonable accommodations for the limitations. *E.g.*, *Gordon v. Acosta Sales & Mktg., Inc.*, 622 Fed. App'x. 426, 429–30 (5th Cir. 2015); *Miller v. Metrocare Services*, 2015 WL 477233, at 14 (N.D. Tex. Feb. 5, 2015) (**Fitzwater, J.**), *aff'd*, 809 F.3d 827 (5th Cir.), *cert. denied*, 136 S. Ct. 2463 (2016). In this case, adequate time for discovery has passed and the EEOC has no admissible summary judgment evidence to establish any of these three elements. Nor does the EEOC have any admissible summary judgment evidence either that Beasley was entitled to any accommodation or that she suffered any injury or damages from AccentCare's failure to provide additional leave.

**B. NO ADMISSIBLE EVIDENCE THAT AN ACCOMMODATION—*i.e.*, ADDITIONAL LEAVE—WAS NECESSARY IN ORDER FOR BEASLEY TO PERFORM THE ESSENTIAL FUNCTIONS OF HER JOB:**

The duty to provide a reasonable accommodation under the ADA arises only when "known physical or mental limitations of an otherwise qualified individual with a disability" prevent that individual from performing the essential functions of a job. *See* 42 U.S.C. § 12112(b)(5)(A). *See Harris v. Dallas County Hosp. Dist.*, 2016 WL 2914847, at 5 (**Fitzwater, J.**; summary judgment for employer: "Parkland contends that Harris' failure-to-accommodate claim fails as a matter of law because the ADA does not require an employer to accommodate an employee if she is capable of performing her essential job functions. Parkland maintains that, in this case, Harris could perform the essential functions of her job without accommodation[.]").

Here, the EEOC contends that on July 9, 2013, Beasley informed AccentCare (1) that her doctor had taken her off work status; and (2) she needed additional, indefinite leave as an accommodation, which—according to the EEOC—AccentCare unreasonably denied. *See Complaint* (Docket No. 1) ¶ 15. Thus, the EEOC's theory is predicated on the contention that Beasley's doctor, Dr. Allawala, made a *medical determination* to take Beasley off work status.

*See Appendix*, pp. 163-168. However, adequate time for discovery has passed[17] and the EEOC has *no* admissible evidence to establish that Dr. Allawala ever took Beasley off work status at *any* time in July, 2013.

First, whether, as a result of her bipolar or ADHD conditions, Beasley was medically able to perform the essential functions of her job as of July 8, 2013, is a question *which requires expert medical opinion testimony*, but the only evidence on which the EEOC relies are Beasley's own self-serving, hearsay statements. *See Appendix*, p. 193 (Trans. pp. 83-85):

> Q. (BY MR. ROSS) You don't have a single piece of paper you can show this jury that Dr. Allawala took you off work status on July 8th, 2013, do you, ma'am?
>
> A. Not anything that I recall.
>
> . . . Q. So the only thing the jury has to go by for the contention that Dr. Allawala took you off work status on July 8th, 2013 is your word, true?
>
> A. Yes.

However, Beasley's testimony in that regard is *inadmissible hearsay. See*, *e.g.*, *Ripple v. Marble Falls Indep. Sch. Dist.*, 99 F. Supp. 3d 662, 678–79 (W.D. Tex. 2015):

> Although Plaintiff's description of his medical symptoms is within his personal knowledge and is not hearsay, Plaintiff's own recounting of his medical diagnoses and his doctor's orders, offered for proof of those diagnoses and orders, constitutes inadmissible hearsay. *See, e.g., Scott v. Turner Indus. Grp., LLC,* 2011 WL 5023842, at 3 (M.D. La. Oct. 19, 2011) ("While plaintiff may testify as to the symptoms that led her to seek treatment and to the treatment she undertook, any clinical diagnoses must be attested to by Dr. Todd"); *Hood v. City of Cleveland,* 2011 WL 533676, at 5 (N.D. Miss. Feb. 15, 2011) (finding that Plaintiff's "statements regarding her doctor 'not approving her to return to work' [were] hearsay and incompetent summary judgment evidence"); *Ham v. Lopez,* 2002 WL 31396066, at 5 (W.D. Tex. Sept. 26, 2002) (finding that Plaintiff's statements "that he suffered an infection and was permanently disabled due to lack of physical therapy or proper stump care," if based on a diagnosis, were impermissible hearsay).

Here, the EEOC has not produced—and cannot produce[18]—*any* evidence whatsoever *from*

---

[17] The EEOC's expert designation deadline was July 31, 2016. *See* Docket No. 14 (¶ IIB).

[18] It is readily apparent from Dr. Allawala's records that he never took Beasley off work status on July 8, 2013. Rather: (1) he saw Beasley on July 8th; (2) scheduled Beasley to "[r]eturn

*Footnote continued on next page . . . .*

13

*Dr. Allawala* that he took Beasley off work status on July 8, 2013. Thus, there is no summary judgment evidence to establish that Beasley *needed* any accommodation to perform the essential functions of her job.[19]

### C. No Evidence Of First Element—That Beasley Was A Qualified Individual With A Disability On The Date Of Termination, July 9, 2013:

An essential element of a reasonable accommodation claim is proof the claimant is a qualified individual with a disability. *E.g.*, *Feist v. La., Dep't of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 452 (5th Cir. 2013). As a matter of law, the EEOC has no evidence to establish this element.

#### 1. The EEOC's Complaint Conclusively Negates the First Element:

Assuming, *arguendo*, that Dr. Allawala, in fact, took Beasley off work status on July 8, 2013, as a matter of law the very allegations of the EEOC's *Complaint* negate the first element of the *prima facie* case.

First, whether an individual is a "qualified individual with a disability" is determined at the time of termination. *E.g.*, *Reeves v. Dollar General Corp.*, 1999 WL 274587, at 2 n. 2 (5th Cir. Apr. 23, 1999).

Second, regular attendance at work is an essential function of a job. *E.g.*, *Carmona v. Sw. Airlines Co.*, 604 F.3d 848, 860 n. 3 (5th Cir. 2010); *Will v. American Airlines, Inc.*, 2008 WL

---

***. . . footnote continued from previous page:***

[in] 2 weeks, or earlier if needed;" (3) never scheduled Beasley for an appointment on July 12th, as Beasley claims; (4) never saw Beasley on July 12th; and (5) Beasley first returned to Dr. Allawala's office on November 4, 2013: "Non—compliant with the treatment came back after for [*sic*] 4 months." *See Appendix*, pp. 50-51, 75, 76, 156-59.

[19] The EEOC has designated a medical expert (Docket Nos. 18, 18-1, and 18-2); however, the "expert's" opinion is limited to a statement that he has reviewed some of Beasley's medical records and agrees with the conclusion that "Ms. Beasley suffers from Bipolar I Mood Disorder" (Docket No. 18-1)—a fact which is undisputed. The "expert" expressed no opinions whatsoever—nor could he—regarding whether Beasley was capable of performing the essential functions of her job on July 8, 2013, July 12, 2013, or any date thereafter.

2570728 (5th Cir. June 25, 2008); *Allen v. Babcock & Wilcox Tech. Services Pantex, LLC*, 2013 WL 5570192, at 6 (N.D. Tex. Oct. 9, 2013). Here, the EEOC alleges that on July 8, 2013, Dr. Allawala "took [Beasley] off work *for an indefinite period of time . . .* and that, as of [July 9, 2013], her doctor *had not provided her with a return to work date*." *Complaint* (Docket No. 1) ¶ 15 (emphasis added). The EEOC is bound by these judicial admissions and cannot, now, contend otherwise.[20] *See, e.g., Martinez v. Bally's La., Inc.*, 244 F.3d 474, 476 (5th Cir. 2001) (admission in pleadings or stipulations is binding on party making them "[and] . . . has the effect of withdrawing a fact from contention."); *Campbell v. Sonat Offshore Drilling, Inc.*, 979 F.2d 1115, 1119 (5th Cir. 1992) (factual assertions in pleadings are conclusively binding).[21] Accordingly, as a matter of law, Beasley was not a qualified individual with a disability on the date of her termination, July 9, 2013. *See, e.g., Amsel v. Tex. Water Development Board*, 2012 WL 913676 (5th Cir. March 19, 2012) ("The question here is whether [plaintiff] was qualified at the time his position was eliminated . . . he gave [defendant] no indication of when he would again . . . return to work."); *Crews v. Dow Chemical Co.,* 287 Fed. App'x. 410, 412 (5th Cir. 2008) (documents from plaintiff's physician stating plaintiff could not "return to work in the foreseeable future" established plaintiff could not perform the essential functions of her job, and was thus not a "qualified individual with a disability"); *Bernard v. EDS Noland Episcopal Day Sch.*, 62 F. Supp. 3d 535, 543 (W.D. La. 2014) (summary judgment granted: "[A]t the time that Bernard was

---

[20] The pleading amendment deadline was February 19, 2016, nearly seven months ago. *See* Docket No. 14 (¶ IID).

[21] Additionally, the summary judgment evidence conclusively establishes that Beasley informed AccentCare that she had supposedly been taken off work status for an indefinite amount of time and had no projected return to work date from her doctor. *See, e.g., Appendix*, p. 53 ("I will be out of the office for an extended amount of time. As of now my doctor has not provided me with a return to work date."); p. 56 ("My doctor has taken me off work for an extended amount of time, he has not provided me with a return to work date."); pp. 59-60 ("[S]o I don't know if I'm going to be able to come back to work on Friday or if it is going to be a month from now. . . . I haven't given you all a time frame. . . . [Nelson]: [Y]our email to me earlier, Alisia, was that you didn't know when you would be able to return to work. [Beasley]: Correct. . . when I go back to the doctor on Friday, he can either release me or he can extend it."); pp. 63-64.

15

terminated, she stated that she did not know when she was going to be permitted to return to work."); *Pickard v. Potter,* 2003 WL 21448593, at 6 (N.D. Tex. Mar. 24, 2003) ("As of her termination date, Pickard's doctor stated in letters to the [employer] that Pickard was unable to work at her regular job, and he was unsure when she would be able to work again—although he gave a variety of anticipated dates that Pickard might be able to return to work.").

### 2. No Admissible Evidence Beasley Was <u>Ever</u> Returned to Work Status:

Again, the EEOC has *conclusively* alleged that on July 8, 2013, Dr. Allawala "took [Beasley] off work *for an indefinite period of time*." *Complaint* (Docket No. 1) ¶ 15 (emphasis added). *See Martinez v. Bally's La., Inc.*, 244 F.3d at 476. Whether Dr. Allawala thereafter ever medically *returned* Beasley to work status is also a question *which requires expert medical opinion testimony*, and the only evidence on which the EEOC relies for its contention that Beasley was subsequently released to return to work are Beasley's own self-serving, hearsay statements. *See Appendix,* p. 193 (Trans. pp. 82-85), pp. 197-98 (Trans. pp. 101-102):

> [p. 84]: Q. You don't have a single piece of paper you can show this jury that Dr. Allawala or anyone in his office returned you to work status on July 12th, 2013, do you, ma'am?
>
> A. No. I did not request it.
>
> . . . Q. The only thing the jury has to go by for your contention that you saw Dr. Allawala or one of his associates on July 12th is your word, true?
>
> . . . A. Yes.
>
> [p. 102]: Q. So you've never provided the EEOC with any documentation to substantiate that your physician released you to return to work on Decemb—on June—July 12th, 2013, correct?
>
> . . . A. No, I have not provided the EEOC something showing that my doctor has released me. The answer to your question is "no."

Beasley's testimony is, as a matter of law, inadmissible hearsay. *See*, *e.g.*, *Ripple v. Marble Falls Indep. Sch. Dist.*, 99 F. Supp. 3d at 678–79. Absent admissible medical evidence Dr. Allawala returned Beasley to work status, as a matter of law Beasley was not a qualified individual with a disability. *See*, *e.g.*, *Anderson v. Inland Paperboard & Packaging*, 11 Fed. App'x. 432,

16

438 (6th Cir. 2001) ("[Plaintiff]'s doctor . . . had not yet given her permission to return to work when her employment with [her employer] was terminated . . . ."); *Gantt v. Wilson Sporting Goods Co.,* 143 F.3d 1042, 1047 (6th Cir. 1998) ("because [plaintiff] was not released by her doctor to return to work, she has not met the second requirement that she be qualified to perform the essential functions of the job."); *Lewis v. University of Maryland*, 2012 WL 5193820, at 4 (D. Md. Oct. 18, 2012) (failure to obtain a medical release "preclude[d] recovery under either a theory of failure to accommodate or a theory of disability discrimination."); *Kitchen v. Summers Continuous Care Center, LLC*, 552 F.Supp.2d 589, 594 (S.D. W.Va. 2008) ("It is well-settled that an individual who has not been released to work by his or her doctor is not a 'qualified individual with a disability.'"); *Crow v. McElroy Coal Co.*, 290 F.Supp.2d 693, 696 (N.D. W.Va. 2003) (summary judgment for employer: "Because [the plaintiff] failed to obtain a release to work from his doctor, [the plaintiff] has not shown that he can perform the essential functions of the job with or without reasonable accommodation.").

**D. NO EVIDENCE OF <u>SECOND ELEMENT</u>—EVIDENCE OF CONSEQUENTIAL LIMITATIONS OF BEASLEY'S CONDITION:**

Although Beasley *represented* to AccentCare that, because of her bipolar and ADHD conditions, she had been taken off work status by Dr. Allawala and needed additional leave, for the reasons previously explained, the EEOC has no admissible summary judgment evidence to substantiate that Dr. Allawala had, in fact, made such a medical determination. *Ripple*, *supra*. That is, the EEOC has no evidence to substantiate that Beasley, in fact, suffered from any "consequential limitations" as a result of her bipolar condition. Absent such evidence, as a matter of law, there is no evidence to support the second element of the *prima facie* case. An employer is not required to accommodate a non-existent "limitation" merely because an employee falsely represents herself to have one.

### E. NO EVIDENCE OF <u>THIRD ELEMENT</u>—THAT ACCENTCARE FAILED TO MAKE A REASONABLE ACCOMMODATION:

According to both Beasley[22] and as conclusively alleged by the EEOC,[23] as of the date of Beasley's termination, July 9, 2013, Beasley's doctor had taken her off work status *for an indeterminate amount of time, with no projected return to work date*. Accordingly, AccentCare's denial of Beasley's request for additional leave was not unreasonable because, as a matter of law, indefinite leave is not a reasonable accommodation. *E.g.*, *Delaval v. PTech Drilling Tubulars, LLC*, 824 F.3d 476, 481 (5th Cir. 2016) ("[A]n employer is not required to provide a disabled employee with indefinite leave."); *Rogers v Int'l Marine Terminals, Inc.*, 87 F.3d 755, 760 (5th Cir. 1996) ("'[R]easonable accommodation does not require [an employer] to wait indefinitely for [an employee's] medical conditions to be corrected.'" [citations omitted]); *Dark v. Houston Meth. San Jacinto Hosp.*, 2016 WL 2770545, at 11 (S.D. Tex. May 12, 2016) (neither of plaintiff's two requests for leave "constituted a request for a viable reasonable accommodation because neither of plaintiff's requests for additional leave was accompanied by any estimate of the date on which she expected to be able to return to work."); *Salem v. Houston Methodist Hosp.*, 2015 WL 6618471, at 7 n. 8 (S.D. Tex. Oct. 30, 2015) ("Even if an employee's request for additional leave includes an end-date, the employee also should show a likelihood that she will be able to resume work on that date."); *Bernard v. EDS Noland Episcopal Day Sch.*, 62 F. Supp. 3d at 543 ("An employer is not required to grant indefinite leave as a reasonable accommodation."); *Fuentes v. Krypton Solutions, LLC*, 2013 WL 1391113, at 4 (E.D. Tex. April 4, 2013) ("Indefinite leave is not a reasonable accommodation.").

Despite the EEOC's admission that at the time of termination Beasley was requesting indefinite leave with no return to work date, the EEOC contends AccentCare's denial of additional leave was unreasonable because (according to the EEOC), "Less than 10 days after first inform-

---

[22] *See*, *e.g.*, *Appendix*, pp. 53, 56, 59-60, 63-64.

[23] *Complaint* (Docket No. 1), ¶ 15.

ing the Defendant that she had bipolar disorder, Beasley's physician released her to return to work. Unfortunately, she had already been fired." *Complaint* (Docket No. 1) ¶ 15.[24] However, adequate time for discovery has passed and, as explained above, the EEOC has no admissible summary judgment evidence to establish that—assuming, *arguendo*, Dr. Allawala, in fact, took Beasley *off* work status on July 8, 2013—Dr. Allawala (or anyone in his office) on July 12, 2013, medically *released* Beasley to return to work. Having—according to the EEOC and Beasley— been medically taken off work status by Dr. Allawala on July 8, 2013, *expert medical testimony* is necessary to establish that, on July 12, 2013, Beasley was medically cleared to return to work, and the EEOC has no such evidence. *See*, *e.g.*, *Ripple v. Marble Falls Indep. Sch. Dist.*, 99 F. Supp. 3d at 678–79.

The EEOC does not have—and never will have—any evidence from Dr. Allawala that he (or anyone from his office) released Beasley on July 12, 2013, to return to work.[25] Accordingly, as a matter of law, the EEOC has no evidence to support the third element of its *prima facie* case. *See Anderson v. Inland Paperboard & Packaging*, 11 Fed. App'x. at 438 (absent a doctor's release: "There is no evidence, then, from which a rational trier of fact could conclude that Lisa satisfied her burden of establishing a *prima facie* case."); *Shirey v. Pepperidge Farm Inc.*, 2002 WL 31233243, at 6 (N.D. Ohio Sept. 25, 2002) ("Because plaintiff has not supplemented his claims with any evidence other than his own self-serving affidavit, he cannot defeat a motion for

---

[24] Curiously, inconsistent with the theory articulated in the *Complaint*, in its interrogatory answers the EEOC contends its failure-to-accommodate claim is predicated on the contention that AccentCare denied Beasley leave to seek medical treatment **on July, 8, 9, and 10**. *Appendix*, pp. 107-08. Such a contention is utterly non-sensical because it is undisputed that Beasley was afforded time off on July 8 and 9, and the EEOC, now, admits that Beasley *had no medical appointments* on July 9 or July 10. *Appendix*, p. 166-68, 172.

[25] There is nothing whatsoever in Dr. Allawala's records to suggest (1) he or anyone in his office had an appointment *scheduled* with Beasley on July 12, 2013; (2) *saw* Beasley on that date; or (3) *released* her to return to work. In fact, the evidence is to the contrary, as reflected in Dr. Allawala's November 4, 2013, clinical notes, *which Beasley tried to conceal by her unilateral redactions*: "Non—compliant with the treatment came back after for [*sic*] 4 months." *See Appendix*, pp. 50-51, 75, 76, 156-59.

19

summary judgment. He has not shown that his doctor, who had repeatedly reported . . . that Shirey was incapable of performing any work throughout his leave period, would have agreed that he was medically capable of returning to his job under altered conditions.").

### F. No Evidence Beasley Suffered Any Damages As A Result Of The Alleged Failure To Provide The Requested Accommodation:

Similarly, absent admissible summary judgment proof that Beasley was, in fact, medically released to return to work on July 12, 2013, the ADA claim also fails as a matter of law because the EEOC cannot show that AccentCare's failure to grant Beasley additional leave through July 12, 2013, caused Beasley any harm. *See Hester v. Williamson County,* 2013 WL 4482918, at 8 (W.D. Tex. Aug. 21, 2013):

> Finally, if Hester is assumed to have made a specific request for eight weeks of leave—as he contends in his briefing—the ADA claim still fails because Hester cannot show that the County's failure to grant him an additional eight weeks of leave caused him harm. As just discussed, Hester's sworn testimony is that he remained unable to perform the essential functions of the mechanic position approximately nineteen months after his termination. . . . Thus, even if the County had granted his request, it would not have resolved Hester's ability to perform his essential functions as a mechanic. As such, Hester cannot establish that the County's failure to grant Hester's requested accommodation caused him any harm as Hester would have been unable to return to work at the expiration of the eight week period.

Similarly, here, even assuming, *arguendo*, that Beasley's request for leave was only through July 12, 2013, rather than indefinite, absent admissible medical evidence Beasley was, in fact, released to return to work on July 12, 2013, the EEOC cannot establish that failure to grant the request caused Beasley any harm. As previously explained, the EEOC has no such evidence.

For all of the foregoing reasons, AccentCare is, as a matter of law, entitled to summary judgment on the EEOC's failure-to-accommodate claim.

## II.

## ADEQUATE TIME FOR DISCOVERY HAS PASSED AND THE EEOC HAS FAILED TO PRODUCE ANY EVIDENCE OF THE SECOND OR FOURTH ELEMENT OF A *PRIMA FACIE* CASE OF DISABILITY DISCRIMINATION. INDEED, THE SUMMARY JUDGMENT EVIDENCE CONCLUSIVELY NEGATES THOSE ELEMENTS.

Although not apparent from the face of the EEOC's *Complaint*, according to its interrogatory answers, in addition to the failure-to-accommodate claim, the EEOC contends Beasley was discharged because of her disability. *Appendix*, p. 107. As a matter of law, the EEOC's contention is without merit and AccentCare is entitled to summary judgment.

### A. APPLICABLE LAW—*PRIMA FACIE* CASE:

In order to establish a *prima facie* case of disability discrimination, the EEOC must establish (1) Beasley had a disability; (2) was "otherwise qualified" to perform the essential functions of the job, either with or without a reasonable accommodation; (3) suffered an adverse personnel action; and (4) there was a causal connection between an adverse employment action and Beasley's disability. *E.g.*, *McInnis v. Alamo Comm. College Dist.*, 207 F.3d 276, 279–80 (5th Cir. 2000); *Harris v. Dallas County Hosp. Dist.*, 2016 WL 2914847, at 9 (**Fitzwater, J.**). Adequate time for discovery has passed and, as a matter of law, the EEOC has no evidence to establish the second or fourth elements of the *prima facie* case.

### B. NO EVIDENCE OF SECOND ELEMENT—THAT BEASLEY WAS A QUALIFIED INDIVIDUAL WITH A DISABILITY ON THE DATE OF TERMINATION, JULY 9, 2013:

For the reasons previously stated in Argument I(C), above, adequate time for discovery has passed and the EEOC has no admissible evidence to support this element of its *prima facie* case. Indeed, the undisputed evidence that at the time of discharge Beasley had—according to the EEOC's own pleading and Beasley's admissions—been indefinitely taken off work status with no projected returned to work date, conclusively negates the second element of the EEOC's *prime facie* case.

### C. NO EVIDENCE OF FOURTH ELEMENT:

Fundamental to establishing a *prima facie* case of discrimination is proof a similarly situated

person outside Beasley's protected class was treated more favorably. *See, e.g., Strong v. Univ. Healthcare Sys., LLC*, 482 F.3d 802, 807 (5th Cir. 2007) (summary judgment for employer affirmed; plaintiff failed to show she was disciplined more harshly than other employees under similar circumstances); *Bryant v. Compass Group USA, Inc.*, 412 F.3d 471, 478 (5th Cir. 2005), *cert. denied*, 546 U.S. 1090 (2006); *Yee v. Baldwin-Price*, 2008 WL 4559856, at 2 (N.D. Tex. Oct. 9, 2008) (plaintiff must adduce evidence she "was treated less favorably than a non-disabled employee"), *aff'd*, 325 Fed. App'x. 375 (5th Cir. 2009) ("To make a *prima facie* case . . . Yee had to show that he 'was . . . treated differently from others similarly situated,'" quoting *Abarca v. Metro. Transit Auth.*, 404 F.3d 938, 941 (5th Cir.2005)). There is no evidence Beasley was disparately treated regarding AccentCare's denial of indefinite leave and discharge of Beasley. To the contrary, the EEOC expressly states in its interrogatory answers: "EEOC does not contend that Charging Party was treated less favorably than a similarly situated nondisabled employee of Defendant." *Appendix*, p. 107. As a matter of law, that admission negates the fourth element of the *prima facie* case.

### III.

**ALTERNATIVELY, ACCENTCARE IS ENTITLED TO SUMMARY JUDGMENT ON THE EEOC'S DISABILITY DISCRIMINATION CLAIM BECAUSE, AS A MATTER OF LAW, ADEQUATE TIME FOR DISCOVERY HAS PASSED AND THE EEOC HAS FAILED TO PRODUCE ANY EVIDENCE SUFFICIENT TO RAISE A GENUINE ISSUE OF MATERIAL FACT ON THE ISSUE OF PRETEXT.**

Even assuming, *arguendo*, the existence of a *prima facie* case of disability discrimination, where, as here, an employer articulates legitimate, non-discriminatory reasons for the termination, the plaintiff bears the burden of establishing the employer's reason is not true, but is instead a pretext for discrimination. A split in opinion exists whether, under the ADA, the appropriate standard at this stage of the *McDonnell-Douglas*[26] analysis is the "motivating factor" or "but for"

---

[26] *McDonnell Douglas v. Green*, 411 U.S. 729 (1973).

test in light of the Supreme Court's opinions in *Univ. Tex. S.W. Med. Ctr. v. Nassar*, 133 S.Ct. 2417, 2533 (2013) ("motivating factor" analysis inapplicable to TITLE VII retaliation claims) and *Gross v. FBL Fin. Servs., Inc.,* 557 U.S. 167, 174–76 (2009) ("motivating factor" analysis inapplicable to age discrimination claims). *E.g.*, *Miller v. Metrocare Services*, 2015 WL 477233, at 16 (**Fitzwater, J.**; recognizing the issue, but declining reach it); *Thomas v. Greystar Mgmt. Services, L.P.*, 2014 WL 2519165, at 3 (N.D. Tex. June 4, 2014) (**Fitzwater, J.** "motivating factor" analysis is inapplicable to disability discrimination claims under the ADA). *Compare*, *e.g.*, *Gohl v. Livonia Pub. Schools*, 2016 WL 4698279, at 6 (6th Cir. Sept. 8, 2016) ("the plaintiff must establish a but-for relationship between the protested act and the individual's disability"); *Hillmann v. City of Chicago*, 2016 WL 4437609, at 6 (7th Cir. Aug. 23, 2016) ("but for" causation applies under the ADA); *Fitzgerald v. Corrections Corp.*, 403 F.3d 1134, 1144 (10th Cir. 2005) (same), with *Delaval v. PTech Drilling Tubulars, LLC*, 824 F.3d at 479 ("We apply a 'motivating factor' test" to ADA claims). In this case, under either standard, as a matter of law the EEOC has no evidence sufficient to establish a genuine issue of material fact regarding pretext.

First, *Owens v. Calhoun Cty. Sch. Dist.*, 546 Fed. App'x. 445, 448 (5th Cir. 2013) (*per curiam*)—a case with remarkably similar facts—is dispositive. In *Owens*, the plaintiff—alleging disability discrimination and failure to accommodate claims analytically identical to those made by the EEOC, here—relied on a phone conversation with her school principal during which Owens merely stated that she had an upcoming doctor's appointment and thought she would then be released to return to work. 546 Fed. App'x. at 446. The Fifth Circuit affirmed summary judgment for the school district, holding that as a matter of law the plaintiff had failed to establish pretext. *Id*., at 448-449 (emphasis added):

> [Owens] also failed to present evidence that she told Calhoun a date when she would return to work. Rather, Owens relies on a phone conversation with her principal during which Owens merely stated that she had an upcoming doctor's appointment and thought she would be released to return to work then. *This fails to establish pretext as she could not state with any certainty when she could return to work.* Moreover, Owens failed to give Calhoun any documentation that she was cleared to work. During her termination hearing, Owens testified that she was capable of working and presented lay testimony

23

that she was physically able to work. However, the school board's finding focused on the absence of a doctor's release, which Owens failed to provide and still does not possess.

Likewise here, Beasley (1) merely informed Nelson that she (allegedly) had an appointment on July 12th and thought she might be released; (2) could not state with certainty when she could return to work; and (3) even now, the EEOC has no admissible evidence of a doctor's release.

Second, pretext cannot be established by Beasley's subjective belief that she was discharged because of her alleged disability. *Price v. Marathon Cheese Corp.*, 119 F.3d 330, 337 (5th Cir. 1997) ("To establish pretext, a plaintiff cannot merely rely on his subjective belief that discrimination has occurred . . . ."); *Douglass v. United Servs. Auto. Assoc.*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*) ("It is well-settled that an employee's subjective belief that he has suffered an adverse employment action as a result of discrimination, without more, is not enough to survive a summary judgment motion . . . .").

Third, although temporal proximity between the date AccentCare first learned of Beasley's disability, July 8th, and the date of the Beasley's termination, July 9, *may* be sufficient to establish the *third element of a prima facie case*, if, as here, the employer articulates legitimate nondiscriminatory reasons for the termination, as a matter of law, temporal proximity is *not* sufficient to raise a genuine issue of material fact on the issue of pretext. *E.g.*, *Aryain v. Wal-Mart Stores Texas, L.P.*, 534 F.3d 473, 486 (5th Cir. 2008) ("temporal proximity standing alone is insufficient to establish an issue of fact as to pretext after an employer has provided a nonretaliatory reason"); *Strong v. University Healthcare System, LLC*, 482 F.3d at 808 ("[*Clark Co. Sch. Dist. v.*] *Breeden*[, 532 U.S. 268 (2001)] makes clear that . . . temporal proximity alone, when very close, can in some instances establish a *prima facie* case of retaliation. But we affirmatively reject the notion that temporal proximity standing alone can be sufficient proof of but for causation." (citation omitted)); *Goyal v. Goodman Networks, Inc.*, 2015 WL 2236665, at 8 (N.D. Tex. May 13, 2015) (same).

Finally, the Commission cannot challenge the wisdom or "fairness" of AccentCare's decision to terminate Beasley, or second-guess AccentCare's exercise of business judgment in this

regard. *E.g.*, *Scott v. Univ. of Mississippi*, 148 F.3d at 509–510; *Hutson v. McDonnell Douglas Corp.*, 63 F.3d 771, 781 (8th Cir. 1995) ("the employment discrimination laws have not vested in the federal courts the authority to sit as super-personnel departments reviewing the wisdom or fairness of the business judgments made by employers").

## CONCLUSIONS AND REQUESTED RELIEF

For all of the foregoing reasons, AccentCare's motion for summary judgment should be, in all things, **GRANTED**.

Respectfully Submitted,

**/s/ John L. Ross**
**JOHN L. ROSS**[27]
Texas State Bar No. 17303020
**CHANTEL L. LEE**
Texas State Bar No. 24081001
**THOMPSON, COE, COUSINS & IRONS, L.L.P.**
700 North Pearl Street, Suite 2500
Dallas, Texas 75201
Telephone: (214) 871-8206 (Ross)
Telephone: (214) 871-8242 (Lee)
Fax:            (214) 871-8209
Email:      jross@thompsoncoe.com
Email:      clee@thompsoncoe.com

**ATTORNEYS FOR DEFENDANT**

## CERTIFICATE OF SERVICE

Pursuant to *Fed. R. Civ. P.* 5(b)(2)(E) and (b)(3), I certify a true and correct copy of the foregoing document was filed electronically on the 13th day of September 2016. Thereby, through the electronic filing system, a copy of the foregoing document was served on Plaintiff's counsel of record.

**/s/ John L. Ross**
**JOHN L. ROSS**

---

[27] Board Certified in Labor & Employment Law and Civil Trial Law by the Texas Board of Legal Specialization.

25