# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | § § § | |
| PLAINTIFF, | § § | |
| | § | CIVIL ACTION NO. 3:15-cv-03157-D |
| VS. | § § | |
| ACCENTCARE, INC., | § § | |
| DEFENDANT. | § | |

## BRIEF IN SUPPORT OF DEFENDANT'S MOTION FOR ATTORNEY FEES

Respectfully Submitted,

**JOHN L. ROSS**[1]
Texas State Bar No. 17303020
**CHANTEL L. LEE**
Texas State Bar No. 24081001

**THOMPSON, COE, COUSINS & IRONS, L.L.P.**
700 North Pearl Street, Suite 2500
Dallas, Texas 75201
Telephone:   (214) 871-8206 (Ross)
Telephone:   (214) 871-8242 (Lee)
Fax:              (214) 871-8209
Email:          jross@thompsoncoe.com
Email:          clee@thompsoncoe.com

**ATTORNEYS FOR DEFENDANT**

---

[1] Board Certified in Labor & Employment Law and Civil Trial Law by the Texas Board of Legal Specialization.

TABLE OF CONTENTS

PAGE

INDEX OF AUTHORITIES                                                          ii

INTRODUCTION                                                                 1

OPERATIVE FACTS                                                             3

   A. THE EEOC'S APATHETIC ADMINISTRATIVE INVESTIGATION        3

      1. An Inexplicable Nearly Eight Month Delay to Even
Initiate an Investigation                                                   3

      2. Inexcusable Inadequacy of the EEOC's Investigation     7

   B. THE EEOC'S "CAUSE" DETERMINATION                           10

ARGUMENT                                                                   10

   FROM TEE TO GREEN, I.E., FROM INITIAL INVESTIGATION
TO CURRENT ONGOING LITIGATION, THE EEOC'S ACTIONS
HAVE, AS A MATTER OF LAW, BEEN FRIVOLOUS,
UNREASONABLE AND WITHOUT FOUNDATION.                                        10

   A. APPLICABLE LAW—STANDARD FOR RECOVERY OF DEFENSE
ATTORNEY FEES UNDER THE ADA                                                 10

   B. THE EEOC'S UNREASONABLE DELAYS AND PREJUDICE TO
ACCENTCARE                                                                 11

   C. THE EEOC'S INADEQUATE INVESTIGATION                        15

   D. THE COMMISSION'S IRRATIONAL—INDEED, SPECIOUS—"CAUSE"
DETERMINATION                                                             16

   E. THE EEOC FILED A FRIVOLOUS SUIT, WITHOUT EVIDENTIARY
OR LEGAL SUPPORT                                                           22

   F. THE EEOC HAS UNREASONABLY CONTINUED THE LITIGATION
AFTER IT SHOULD HAVE BECOME APPARENT FROM (1) DR.
ALLAWALA'S RECORDS AND (2) BEASLEY'S DEPOSITION, THAT
NO FACTUAL BASIS EXISTED FOR THE EEOC'S CLAIMS                              22

CONCLUSIONS AND REQUESTED RELIEF                                            23

INDEX OF AUTHORITIES

PAGE(S)

**CASES:**

*Aryain v. Wal-Mart Stores Texas, L.P.*,
    534 F.3d 473 (5th Cir. 2008)           17

*Christianburg Garment Co. v. EEOC*,
    434 U.S. 412 (1978)           2, 10, 11

*Delaval v. PTech Drilling Tubulars, LLC*,
    824 F.3d 476 (5th Cir. 2016)           18

*EEOC v. Agro Distrib. LLC*,
    2007 WL 1031649 (S.D. Miss. March 30, 2007),
    *aff'd*, 555 F.3d 462 (5th Cir. 2009)           1, 2, 16

*EEOC v. Caribe Hilton Int'l*,
    821 F.2d 74 (1st Cir. 1987)           22, 23

*EEOC v. Dresser Indus., Inc.*,
    668 F.2d 1199 (11th Cir. 1982)           15

*EEOC v. Global Horizons, Inc.*,
    100 F. Supp. 3d 1077 (E.D. Wash. 2015)           11, 16

*EEOC v. Great Atlantic & Pacific Tea Co.*,
    735 F.2d 69 (3rd Cir.), *cert. dismissed* 469 U.S. 925 (1984)           11

*EEOC v. Hendrix Coll.*,
    53 F.3d 209 (8th Cir. 1995)           22

*EEOC v. La. Power & Light Co.*,
    1989 WL 35915 (E.D. La. 1989)           1

*EEOC v. Peoplemark, Inc.*,
    732 F.3d 584 (6th Cir. 2013)           23

*EEOC v. Peterson, Howell & Heather*,
    702 F.Supp. 1213 (D. Md. 1989)           15

*EEOC v. Propak Logistics, Inc.*,
    746 F.3d 145 (4th Cir. 2014)           11, 14, 23

ii

PAGE(S)

*EEOC v. Propak Logistics, Inc.*,
    884 F. Supp. 2d at 433 (W.D. N.C. 2012)        11-15

*EEOC v. TriCore Reference Labs.*,
    493 Fed. App'x. 955 (10th Cir. 2012)        23

*Hester v. Williamson County*,
    2013 WL 4482918 (W.D. Tex. Aug. 21, 2013)        21

*Jeffries v. Chicago Transit Authority*,
    770 F.2d 676 (7th Cir.), *cert. denied* 475 U.S. 1050 (1986)    15

*Ripple v. Marble Falls Indep. Sch. Dist.*,
    99 F. Supp. 3d 662 (W.D. Tex. 2015)        8

*Rogers v Int'l Marine Terminals, Inc.*,
    87 F.3d 755 (5th Cir. 1996)        18

*Smith Caterpillar, Inc.*,
    338 F.3d 730 (7th Cir. 2003)        12, 15

*Soto-Ocasio v. Fed. Express Corp.*,
    150 F.3d 14 (1st Cir. 1998)        21

*Stafne v. Unicare Homes*,
    266 F.3d 771 (8th Cir. 2001)        21

*Strong v. Univ. Healthcare Sys., LLC*,
    482 F.3d 802 (5th Cir. 2007)        17

*Woodson v. Scott and White Mem. Hosp.*,
    2007 WL 3076937 (5th Cir. 2007)        17

*Yee v. Baldwin-Price*,
    2008 WL 4559856 (N.D. Tex. Oct. 9, 2008),
    *aff'd*, 325 Fed. App'x. 375 (5th Cir. 2009)        17

**OTHER AUTHORITIES:**

42 U.S.C. § 12205        10

*Employer-Provided Leave and the Americans with*
    *Disabilities Act* (May 9, 2016)        18

PAGE(S)

*Enforcement Guidance: Reasonable Accommodation and*
*Undue Hardship Under the Americans with Disabilities*
*Act* (Oct. 17, 2002)                                                     17

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **EQUAL EMPLOYMENT OPPORTUNITY** | § | |
| **COMMISSION,** | § | |
| | § | |
| **PLAINTIFF,** | § | |
| | § | **CIVIL ACTION NO. 3:15-CV-03157-D** |
| **VS.** | § | |
| | § | |
| **ACCENTCARE, INC.,** | § | |
| | § | |
| **DEFENDANT.** | § | |

## INTRODUCTION

This is a disability discrimination lawsuit brought by the EEOC on behalf of Alisia Beasley ("Beasley"). For the reasons cited in AccentCare's *Motion for Summary Judgment* and brief in support (Docket Nos. 23 and 24), AccentCare is, as a matter of law, entitled to summary judgment, because, *inter alia*, the EEOC cannot even make out a *prima facie* case on either of its claims.

Worse, however, this is a lawsuit which never should have been filed. Specifically, while critical fact witnesses died—literally—or departed and moved across the country, and while memories faded,[2] the EEOC took more than two years to conduct an "investigation" characterized more by "periods of total inactivity and lengthy periods of inter-office paper shuffling," *EEOC v. La. Power & Light Co.,* 1989 WL 35915, at 4 (E.D. La. 1989), rather than by any meaningful and sincere interest in neutrally discovering the facts and impartially applying the applicable law. *See, e.g., EEOC v. Agro Distrib. LLC*, 555 F.3d 462, 473 (5th Cir. 2009) ("[T]he EEOC owes duties to employers as well: a duty reasonably to

---

[2] When deposed on July 19, 2016, more than 40 times during a 160-page deposition Beasley testified that she could not remember or did not recall the answers to factual questions regarding the relevant events.

investigate charges . . . and a duty to cease enforcement attempts after learning that an action lacks merit" $225,000 awarded in defense attorney fees).

Instead, despite being aware of the existence of crucial evidence indispensable to reaching a just disposition—*i.e.*, Dr. Allawala's medical records—the EEOC inexplicable made *no effort whatsoever* to obtain the records and, instead, relied exclusively on partial copies of the relevant records unilaterally doctored by Beasley, before reaching a fatally flawed, agenda-driven[3] "cause" determination and filing this lawsuit. As a matter of law, this lawsuit has from the outset been "frivolous, unreasonable, or without foundation." *Christianburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1978).

Additionally, however, after *finally* having obtained Dr. Allawala's medical records *in March* and, still, after Beasley's deposition *in July*, contrary to established law the EEOC has merely continued to prosecute the lawsuit, despite the lack of *any* admissible evidence to support *either* of the two fundamental fulcrums of its case, *i.e.*, that (1) on July 8, 2013, Dr. Allawala medically took Beasley *off* work status; and (2) on July 12, 2013, Dr. Allawala—or *some* unidentified person in Allawala's office—*returned* Beasley to work status. *See, e.g.*, *EEOC v. Agro Distrib. LLC*, 2007 WL 1031649 (S.D. Miss. March 30, 2007), *aff'd*, 555 F.3d at 473 (EEOC continued litigation after Charging Party's deposition testimony revealed lack of valid ADA claim).

Accordingly, AccentCare should be awarded recovery of defense attorney fees, expenses and costs since August 8, 2014, the date it submitted its position statement to the EEOC.

---

[3]   *See*,   *e.g.*,   https://www.eeoc.gov/eeoc/meetings/6-8-11/east.cfm; https://www.eeoc.gov/eeoc/publications/ada-leave.cfm?utm_content=&utm_medium=email&utm_name=&utm_source=govdelivery&utm_term=

## OPERATIVE FACTS

**A. THE EEOC'S APATHETIC ADMINISTRATIVE INVESTIGATION:**

### 1. An Inexplicable Nearly Eight Month Delay to Even Initiate an Investigation:

On or about **October 25, 2013**, Beasley submitted a three-page *Intake Questionnaire* to the EEOC, informing the EEOC of her disability discrimination allegations. *Appendix*, pp. 71-73, and 194 (Trans. pp. 86-87).[4] For six weeks thereafter, *the EEOC did nothing. Id.,* p. 77.

On **December 11, 2013**, the matter was first assigned to an investigator. *Id.* Once assigned, for three more weeks *the EEOC did nothing. Id.*

On **December 30, 2013**, the EEOC finally sent Beasley a form letter acknowledging receipt of Beasley's *Intake Questionnaire* and promising Beasley that sometime in the next 60 days someone at the EEOC might actually review the three page document. *Id.*, pp. 77, 79. In fact, for <u>more than five more months</u>, *the EEOC did nothing. Id.*, p. 77.

On **June 4, 2014**, the EEOC finally sent Beasley a second form letter—a "10 day contact letter"—informing Beasley additional information was needed and affording her ten days in which to contact the EEOC. *Id.*, p. 77, 80.

Finally, on **June 11, 2014**—*nearly <u>eight months</u> after Beasley submitted the Intake Questionnaire*—an EEOC investigator *finally* interviewed Beasley. *Id.*, pp. 77. This was the *first* substantive contact between the EEOC and Beasley. *Id.*, pp. 196 (Trans. pp. 94-96). Beasley provided the EEOC with copies of a portion of Dr. Allawala's clinical notes from July 8 (*id.*, p. 49) and November 14, 2013 (*id.*, p. 74), *which Beasley had unilaterally redacted.* Regarding the July 8,

---

[4] References to the *Appendix* are to the *Appendix in Support of Defendant's Motion for Summary Judgment.*

2013, clinical notes (*id.*, p. 49),[5] Beasley later testified during her deposition (*id.*, p. 191 (Trans. p. 77)):

> Q. When you turned Dr. Allawala's medical records over to the EEOC, was it blacked out like it is in Exhibit 109?
>
> A. Yes. I redacted out the information.
>
> Q. You did?
>
> A. Yes, I did.
>
> Q. Why did you redact that information?
>
> A. Because I decided to.
>
> Q. Why?
>
> A. I just wanted to.

---

5



Regarding the November 14, 2013, clinical notes (*id.*, p. 74),[6] Beasley similarly smugly testified (*id.*, p. 195 (Trans. p. 91)):

> Q. Did you also black out the information that's on Page 147 before you turned it over to the EEOC?
>
> A. Yes, I did also redact out the information.
>
> . . . Q. (BY MR. ROSS) Why did you delete the first sentence of his progress notes?
>
> A. I just wanted to. I didn't feel like it was relevant.
>
> Q. Why wasn't it relevant?
>
> A. I didn't think it was.

Based on the information Beasley provided, on **June 12, 2014**, the EEOC investigator drafted and mailed to Beasley a proposed *Charge of Discrimination*. *Id.*, pp. 81-84. Beasley signed the *Charge* on **July 10, 2014** (*id.*, pp. 85, 196 (Trans. p. 97)); but, the EEOC prepared and, on **July 15, 2014**, Beasley signed, a second *Charge* because the EEOC investigator had omitted the failure-to-accommodate allegations from the first draft *Charge*. *Id.*, pp. 86, 196 (Trans. p. 97)).

Finally, on **July 15, 2014**—*more than a year after Beasley had been discharged* and nearly nine months after Beasley has first contacted the EEOC,

---

[6]

5501 Independence Parkway
Suite ·
(972) 596-4393
(972) 596-4840

Beasley, Alisia                                   11/4/2013
ID: 13024          DOB: 11/27/1984                5:29:10 PM

**Progress Note**

described by Ms. Beasley. Her symptoms are unchanged in frequency and intensity. There is no change in anhedonia. Her difficulty in concentrating is the same. She reports that excessive worrying continues unchanged. Irritability continues unchanged. Ms. Beasley reports that she continues to feel sad. Symptoms of mania are present. . Symptoms of manic process have lessened and she is better. Ms. Beasley continues distractible. Mood irritability is present and unchanged. Ms. Beasley continues to describe her thoughts as "racing." the increase in sociability continues Depressive symptoms are unchanged. Some angry outbursts are occurring. She describes no side effects and none are in evidence.

5

the EEOC mailed *Notice of the Charge* to AccentCare. *Id.*, pp. 87-89.[7] In its cover letter, the EEOC blithely acknowledged its responsibility for the inordinate delay in notifying AccentCare and conveyed its bureaucratic "regret" for any "inconvenience" (*id.*; emphasis added):

> Dear Ms. Nelson:
>
> The above-captioned Charging Party has filed a charge of employment discrimination against your organization which, *as a result of administrative limitations affecting our operations, could not be timely served.*[8] Although we were unable to timely notify you of the cited charge, the charge service delay occurred through no fault of the Charging Party. The laws we enforce have been interpreted by the courts to allow for such administrative action without disadvantage to the Charging Party in these circumstances.
>
> As part of our notification, enclosed please find a copy of the Notice of Charge of Discrimination and the Charge of Discrimination.
>
> *We regret any <u>inconvenience</u> to the parties.*

Rather than a mere "inconvenience," however, five months earlier, on **February 6, 2014, Kim Nelson**—the person to whom the letter was addressed and a key witness for AccentCare—had retired from the company for health rea-

---

[7] By the time the EEOC got around to notifying AccentCare of Beasley's allegations, AccentCare's obligation to preserve records relevant to Beasley's claim had already expired. *See* 29 C.F.R. § 1602.14 (emphasis added): "Any personnel or employment record made or kept by an employer . . . shall be preserved by the employer for a period of one year from the date of the making of the record or the personnel action involved, whichever occurs later. In the case of involuntary termination of an employee, the personnel records of the individual terminated shall be kept for a period of one year from the date of termination."

[8] *See* 42 U.S.C. § 2000e-5(b): "[T]he Commission shall serve a notice of the charge (including the date, place and circumstances of the alleged unlawful employment practice) on such employer, employment agency, labor organization, or joint labor-management committee (hereinafter referred to as the 'respondent') within ten days."

6

sons.[9] Additionally, although Beasley's allegations had languished at the EEOC for six months before anyone ever reviewed Beasley's *Intake Questionnaire* and for nearly nine months before a *Charge* was perfected, in the *Notice of Charge* the EEOC saw fit to demand that AccentCare submit a position statement *within thirty (30) days*! *Id.*, p. 89.[10]

In compliance with the EEOC's demand, on **August 8, 2014**—*one week early*—AccentCare submitted its position statement to the EEOC by Federal Express priority overnight delivery. *Id.*, pp. 90-91, and 201.

### *2. Inexcusable <u>Inadequacy</u> of the EEOC's Investigation:*

As discussed further, below, on **August 3, 2015**—*more than two years after Beasley's discharge and one year after AccentCare submitted its position statement*—the EEOC summarily issued its "cause" determination and demanded that AccentCare pay Beasley more than $185,000. *Id.*, p. 92-99. Shockingly:

> ➢ In the nearly *thirteen months* between July 15, 2014, when Beasley signed the second *Charge of Discrimination* (*id.*, p. 86) and August 3, 2015, when the EEOC issued its "cause" determination (*id.*, pp. 92-99), *the EEOC had no further substantive/investigative communications with Beasley. Id.*, p. 197 (Trans. 98). *See also, id.*, pp. 77-78.

> ➢ Likewise, *during the one year* between submission of AccentCare's position statement (*id.*, pp. 90-91) on August 8, 2014,[11] and August 3, 2015, when the EEOC issued its "cause" determination (*id.*, pp. 92-99), *the EEOC also had no further substantive/investigative communications with AccentCare*—not one phone call, not one witness interview, not one re-

---

[9] Nelson later passed away on **January 6, 2016**, eight days before Accent-Care filed its answer to this lawsuit. *Id.*, p. 202.

[10]

3.  [X]  Please provide by **15-AUG-14** a statement of your position on the issues covered by this charge, with copies of any supporting documentation to the EEOC Representative listed below.  Your response will be placed in the file and considered as we investigate the charge. A prompt response to this request will make it easier to conclude our investigation.

[11] The position statement contained over 75 pages of supporting documents.

quest for clarification or explanation . . . *nothing*. *Id.*, p. 201. *See also,* *id.*, pp. 77-78.

Even more incomprehensible is the fact that, as explained in Defendant's *Motion for Summary Judgment* and supporting brief (Docket Nos. 23 and 24) the fundamental lynchpins of the EEOC's discrimination theory are the contentions that (1) on July 8, 2013, Dr. Allawala took Beasley off work status; and (2) on July 12, 2013, Dr. Allawala—or *someone* in his office—returned Beasley to work status and, as a matter of law (3) Beasley's self-serving assertions in those regards are inadmissible hearsay; and (4) those contentions require expert medical opinion testimony,[12] ***yet, the EEOC never obtained Dr. Allawala's records before making its "cause" determination!!*** Specifically:

➢ First, both Beasley and the EEOC admit that Beasley provided self-redacted copies of Dr. Allawala's clinical notes to the EEOC. *Id.*, pp. 49, 191 (Trans. p. 77), and pp. 74, 195 (Trans. 91).

➢ Second, when the EEOC made its Rule 26 initial disclosures on **February 16, 2016**, the only copies of Dr. Allawala's clinical notes which the EEOC produced were the redacted copies it had received from Beasley. *See, id.*, pp. 49, 74, and 175 (Response to Request for Admission No. 68).

➢ Third, after AccentCare objected to receiving redacted copies of Beasley's medical records, on **March 14, 2016**, the EEOC *admitted it didn't then yet have unredacted copies of Dr. Allawala's records and that the copies of the records "which were contained in the investigative file" were the redacted copies received from Beasley. Id.*, pp. 100-01 (emphasis added):

> We expect to provide medical records to you in accordance with the federal rules. We do not expect the records to contain redactions, and *we will provide unredacted versions of batestamped pages EEOC 00021 and 22 that were contained in the investigative file.*

➢ Fourth, when, two weeks later, the EEOC had *still* not provided unredacted copies of Beasley's medical records, AccentCare renewed its request for the records. *Id.*, p. 109. On **March 30, 2016**, the EEOC re-

---

[12] *See, e.g., Ripple v. Marble Falls Indep. Sch. Dist.*, 99 F. Supp. 3d 662, 678–79 (W.D. Tex. 2015).

8

sponded that it was "*still* working on tracking [Beasley's medical records] down, *although we have another group of medical documents that we expect to deliver to you first thing in the morning.*" *Id.* (emphasis added). The next morning, **March 31, 2016**, the EEOC *finally* produced Dr. Allawala's records, unredacted. *Id.*, p. 119-33. Even more astonishing than the discrepancies between Dr. Allawala's records and Beasley's various accounts of events and her July 2013 emails exchanged with Besh and Nelson,[13] however, was the revelation that the EEOC had not obtained Dr. Allawala's records *until March 29, 2016*—more than a year and a half *after* it had issued its "cause" determination *and six months after it filed suit. Id.*, p. 121:

14

---

[13] *See* Docket No. 24, pp. 4-10.

[14] Barbara Fuller is identified in the EEOC's interrogatory answers as "an EEOC paralegal" working in the EEOC's Dallas District Office. *Id.*, p. 106.

9

## B. THE EEOC'S "CAUSE" DETERMINATION:

After AccentCare expeditiously submitted its position statement on August 8, 2014, *it took the EEOC another year* to issue a perfunctory "cause" determination (*id.*, pp. 92-93), discussed *infra*, devoid of any meaningful analysis and riddled with fatal factual and legal fallacies.[15]

## ARGUMENT

## FROM TEE TO GREEN, *I.E.*, FROM INITIAL INVESTIGATION TO CURRENT ONGOING LITIGATION, THE EEOC'S ACTIONS HAVE, AS A MATTER OF LAW, BEEN FRIVOLOUS, UNREASONABLE AND WITHOUT FOUNDATION.

## A. APPLICABLE LAW—STANDARD FOR RECOVERY OF DEFENSE ATTORNEY FEES UNDER THE ADA:

The ADA attorney fee provision, 42 U.S.C. § 12205, states:

In any action or administrative proceeding commenced pursuant to this chapter, the court or agency, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee, including litigation expenses, and costs, and the United States shall be liable for the foregoing the same as a private individual.

A prevailing defendant is entitled to recover attorney fees if the plaintiff's action—here, the EEOC's—was frivolous, unreasonable, or without foundation." *Christianburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1978). "However,

---

[15] The EEOC has offered no explanation for why it took *another year*, after submission of AccentCare's position statement—with no apparent additional investigation—for the EEOC to issue its "cause" determination. *See, id.*, pp. 77-78. Allowing Beasley's *Charge* to inexplicably languish for a *second* year further prejudiced AccentCare because on July 10, 2015, Besh—the other critical witness for AccentCare—resigned from the company and moved to Phoenix, Arizona. *See* https://www.linkedin.com/in/dena-besh-54b18b4?authType=OPENLINK&authToken=HmK5&locale=en_US&srchid=2279525251473826149862&srchindex=1&srchtotal=2&trk=vsrp_people_res_name&trkInfo=VSRPsearchId%3A2279525251473826149862%2CVSRPtargetId%3A12378443%2CVSRPcmpt%3Aprimary%2CVSRPnm%3Atrue%2CauthType%3AOPENLINK

a finding of bad faith is not required for a prevailing defendant to be awarded attorneys' fees." *EEOC v. Propak Logistics, Inc.*, 746 F.3d 145, 151 (4th Cir. 2014) ($189,113.50 in defense attorney fees awarded against EEOC). *Accord, e.g.*, *EEOC v. Global Horizons, Inc.*, 100 F. Supp. 3d 1077, 1081 (E.D. Wash. 2015) ("[T]he Court need not consider the EEOC's intent when it filed the lawsuit." citing *Propak*).

> [A] court must consider the totality of the information possessed by the EEOC when it filed the lawsuit in order to determine if the filing was reasonable, frivolous, or without foundation. This totality-of-the-circumstances assessment requires the court to consider what the EEOC learned during its investigation, prior to its reasonable-cause determination, and during its conciliation process and thereafter. Although the Court is not reviewing the individual sufficiency of the EEOC's reasonable-cause determination or conciliation process, the Court must consider the information discovered (or failed to be discovered) during these processes in order to assess whether the EEOC filed the lawsuit with foundation or whether the filing was reasonable or frivolous. Permitting judicial review of the EEOC's pre-lawsuit knowledge and decision to file the lawsuit based on such knowledge, at this stage of the litigation, *i.e.,* after liability has been determined in the defendant's favor, is consistent with Title VII's purposes—which is to ensure that discriminatory conduct is eliminated while at the same time ensuring that businesses are not unduly burdened by the Title VII process. *See Christiansburg Garment Co.,* 434 U.S. at 422, n. 20, 98 S.Ct. 694 ("The other side of this coin is the fact that many defendants in Title VII claims are small- and moderate-size employers for whom the expense of defending even a frivolous case may become a strong disincentive to the exercise of their legal rights.").

*EEOC v. Global Horizons, Inc.*, 100 F. Supp. 3d at 1080–81.

Here, every aspect of the EEOC's handling of Beasley's claims has been unreasonable, frivolous, and without foundation.

## B. THE EEOC'S UNREASONABLE DELAYS AND PREJUDICE TO ACCENTCARE:

Whether the EEOC's delay in processing Beasley's allegations is unreasonable is a question of law for the Court. *EEOC v. Great Atlantic & Pacific Tea Co.*, 735 F.2d 69, 81 (3rd Cir.), *cert. dismissed* 469 U.S. 925 (1984); *EEOC v. Propak*

11

*Logistics, Inc.*, 884 F. Supp. 2d at 433, 441 (W.D. N.C. 2012). So, too, is the question whether the resulting circumstances are prejudicial. *Id. See also Smith v. Caterpillar, Inc.*, 338 F.3d 730, 733 (7th Cir. 2003) (laches defense is appropriate for summary judgment where the facts necessary to resolution are not genuinely disputed).

Here, as detailed previously, before reaching its patently erroneous conclusions, the EEOC spent two years, with minimal effort, conducting an "investigation" characterized by long, unexplained gaps and bureaucratic paper shuffling. *Appendix*, p. 78:

12

| Date | Action | Entered By | Reviewed/Approved |
|------|--------|-----------|-------------------|
| 12/11/2013 | Rec'd | B. Singh | |
| 12/11/2013 | Assigned To Sandra Taylor | B. Singh | |
| 12/30/13 | mailed contact letter assignment to CP | SF | |
| 6/4/14 | 10 day contact ltr to CP | JT | |
| 9/11/14 | Interview + counsel CP | ST | |
| 6/12/14 | Mail chg to CP for sig #1420 new apt #1 for CP | ST | |
| 7/11/14 | Signed chg recvd fr. CP served as if orig, redrafted not | ST | |
| 7/11/14 | Chg formalized | ST | |
| 7/14/14 | Chg redrafted to include addtl issue | ST | |
| 7/15/14 | CP came into ofc to sign form 5 | ST | |
| 7/15/14 | Cy of form 5 to CP w/ADR docs | ST | |
| 7/15/14 | Cy of chg + 131 to R w/ miss docs | ST | |
| 7/15/14 | 212 w/ cy + letrs to TWCCRD | ST | |
| 7/15/14 | file to Supervisor | ST | |
| 2/12/14 | CR 114 → mediation | |
| 7/23/2014 | ADR | |
| 8/25/16 | Transfer to Enforcement  T2 | EC | |
| 5/18/15 | assign to J. Clark | | |
| 7/23/15 | return to Enforcement | | |
| 3/15 | Left PDI mess age on Brandon Wms voice mail | JL | |

EEOC Form 155 (10/94)

☐ DEPOSITION

*See EEOC v. Propak Logistics, Inc.*, 884 F. Supp. 2d at 441–42:

> Here, there were significant periods when the EEOC took little or no action toward completing the investigation. . . . It took the EEOC six months to conduct the initial interview with Quintois; and, although Propak submitted its position statement in May 2003, Quintois was not interviewed for a response thereto until a full year later.

Here, it took the EEOC nearly eight (8) months to first interview Beasley and although AccentCare promptly submitted its position statement, the EEOC *took no further investigative activity* during the next year, before issuing its fallacious "cause" determination. As a matter of law, the time taken to conduct the EEOC's token "investigation" was wholly unreasonable. *See EEOC v. Propak Logistics, Inc.*, 746 F.3d at 150 ($189,000 fee award against EEOC affirmed because of unreasonable delays which prejudiced defendant due to resultant loss of records and unavailability of witnesses); *EEOC v. Propak Logistics, Inc.*, 884 F. Supp. 2d at 441–42 ("Based upon the undisputed facts in the record, the

14

Court concludes as a matter of law that the delay in this case was unreasonable[.]").

Likewise, as a matter of law, AccentCare has been prejudiced by the EEOC's wholly unreasonable delay. Kim Nelson is dead. Dena Besh no longer works for AccentCare and lives in Arizona. During her deposition, Beasley conveniently purported not to remember key facts or events. *See EEOC v. Propak Logistics, Inc.*, 884 F. Supp. 2d at 443–44:

> A "company should not be held responsible for the intervening . . . voluntary and involuntary terminations which normally occur with the passage of time." *Dresser,* 668 F.2d at 1203 (internal quotation and citation omitted). "[T]he fact that [Propak] 'faces the hardship of locating the former employees and procuring their testimony' years after the company no longer has any reason to stay in contact with them demonstrates prejudice to [Propak]" because "the law does not require [Propak] to prove the absolute unavailability of . . . witnesses as a prerequisite for laches." *Smith,* 338 F.3d at 734 (quoting *Jeffries v. Chicago Transit Authority,* 770 F.2d 676, 681 (7th Cir.), *cert. denied* 475 U.S. 1050, 106 S.Ct. 1273, 89 L.Ed.2d 581 (1986)).
>
> Propak also cites Davis' testimony that previous employees, including Ponder and Gay, will have faded memories of the time period at issue, 2002 through 2004. *Smith,* 338 F.3d [730] at 733–34, 735 n. 2; [*EEOC v.*] *Peterson, Howell & Heather,* 702 F.Supp. [1213] at 1223 [(D. Md. 1989)]. The Court agrees.

*See also EEOC v. Dresser Indus., Inc.*, 668 F.2d 1199, 1202-04 (11th Cir. 1982) (prejudice shown by death or unavailability of key witnesses, turnover in personnel, and loss of records); *EEOC v. Alioto Fish Co.*, 623 F.2d 86, 88-89 (9th Cir. 1980) (same); *EEOC v. Liberty Loan Corp.*, 584 F.2d 853, 857-58 (8th Cir. 1978) (prejudice from supervisors and corporate managers had left the company as a result of a reorganization).

## C. THE EEOC'S INADEQUATE INVESTIGATION:

It is absolutely inexcusable that the Commission relied on unilaterally redacted records supplied by Beasley, never obtained Dr. Allawala's medical rec-

15

ords during its investigation, and never took any whatsoever action to verify or corroborate Beasley's contentions. *See EEOC v. Agro Distrib. LLC*, 555 F.3d at 473:

> The EEOC must vigorously enforce the Americans with Disabilities Act and ensure its protections to affected workers, but in doing so, the EEOC owes duties to employers as well: a duty reasonably to investigate charges, a duty to conciliate in good faith, and a duty to cease enforcement attempts after learning that an action lacks merit. In this case, the EEOC abandoned its duties and pursued a groundless action with exorbitant demands.

Here, the EEOC abdicated its responsibility by failing to timely obtain Dr. Allawala's records or make any other effort to corroborate Beasley's accusations, instead of accepting Beasley's contentions as gospel. *See EEOC v. Global Horizons, Inc.*, 100 F. Supp. 3d at 1090 ("The Court finds the EEOC failed to conduct an adequate investigation before filing the lawsuit against the Grower Defendants and as a result its Title VII claims against the Grower Defendants were baseless, unreasonable, and frivolous.")

## D. THE COMMISSION'S IRRATIONAL—INDEED, SPECIOUS—"CAUSE" DETERMINATION:

First, the EEOC summarily opined "that Respondent discriminated against the Charging Party in violation of the Americans with Disabilities Act of 1990, as amended, by terminating the Charging Party because of her disability." *Id.*, p. 92. However, the only rationale articulated for this supposition is (1) "Charging Party was terminated shortly after she informed Respondent of her disability;" (2) "in spite of the absence any prior warnings, performance improvement plans, or other similar disciplinary actions by Respondent." *Id.* The second portion of the EEOC's hypothesis is demonstrably false (*see, id.*, pp. 41-47 and 183 (Trans. p. 34)). Beasley was, admittedly, counseled regarding attendance and other issues. *Id.*, pp. 44, 46-47, and 183 (Trans. p. 34). The first portion of the EEOC's syllogism disregards applicable law that where, as here,

16

the employer articulates legitimate non-discriminatory reasons for termination, temporal proximity is *not* sufficient to raise a genuine issue of material fact on the issue of pretext. *E.g.*, *Aryain v. Wal-Mart Stores Texas, L.P.*, 534 F.3d 473, 486 (5th Cir. 2008) ("temporal proximity standing alone is insufficient to establish an issue of fact as to pretext after an employer has provided a non-retaliatory reason"); *Strong v. Univ. Healthcare Sys., LLC*, 482 F.3d 802, 807 (5th Cir. 2007); *Woodson v. Scott and White Mem. Hosp.*, 2007 WL 3076937 (5th Cir. 2007) (once employer offers nondiscriminatory reason, plaintiff must offer some evidence from which jury may infer unlawful reason was the real motive for the adverse action).

Second, moreover, the EEOC *admits* that Beasley was *not* disparately treated. "EEOC does not contend that Charging Party was treated less favorably than a similarly situated nondisabled employee of Defendant." *Appendix*, p. 107. As a matter of law, that admission negates the fourth element of the *prima facie* case of disability discrimination. *See, e.g.*, *Yee v. Baldwin-Price*, 2008 WL 4559856, at 2 (N.D. Tex. Oct. 9, 2008) (plaintiff must adduce evidence she "was treated less favorably than a non-disabled employee"), *aff'd*, 325 Fed. App'x. 375 (5th Cir. 2009) ("To make a *prima facie* case . . . Yee had to show that he 'was . . . treated differently from others similarly situated,'" quoting *Abarca v. Metro. Transit Auth.*, 404 F.3d 938, 941 (5th Cir.2005)).[16]

---

[16] Given the EEOC's acknowledgement that Beasley was not disparately treated, the EEOC's "cause determination" and subsequent lawsuit alleging unlawful, discriminatory discharge is especially baffling because it flies in the face of the EEOC's own publicly issued "guidance." *See Enforcement Guidance: Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities Act* (Oct. 17, 2002) (¶ 16: "An employer does not have to provide paid leave beyond that which is provided to similarly-situated employees.").

*See* https://www.eeoc.gov/policy/docs/accommodation.html

Third, the Commission's failure-to-accommodate "finding" is, on the facts of the case, demonstrably wrong and contrary to established precedent. Indefinite leave—which is what Beasley sought here—is, as a matter of law, not a reasonable accommodation. *E.g.*, *Delaval v. PTech Drilling Tubulars, LLC*, 824 F.3d 476, 481 (5th Cir. 2016) ("[A]n employer is not required to provide a disabled employee with indefinite leave."); *Rogers v Int'l Marine Terminals, Inc.*, 87 F.3d 755, 760 (5th Cir. 1996) ("'[R]easonable accommodation does not require [an employer] to wait indefinitely for [an employee's] medical conditions to be corrected.'" [citations omitted]). Accordingly, as a matter of law, AccentCare did not.

Fourth, the EEOC's "cause determination" (and subsequent lawsuit) are particularly mystifying and inexcusable given (1) the information known to the EEOC even from its cursory "investigation;" and (2) that the determination and lawsuit allegations are contrary to the EEOC's recent *Employer-Provided Leave and the Americans with Disabilities Act* (May 9, 2016) https://www1.eeoc.gov/eeoc/publications/ada-leave.cfm?renderforprint=1 (emphasis added):

> [I]ndefinite leave—*meaning that an employee cannot say whether or when she will be able to return to work at all*—will constitute an undue hardship, and so does not have to be provided as a reasonable accommodation.

Here, by the time the EEOC issued its "cause" determination it presumably had received from Beasley—or, with a competent investigation should have received—a copy of Beasley's July 9, 2013, furtively recorded phone conversation with Nelson. From that conversation *alone*, the EEOC knew, or should have known, that—according to Beasley herself—Beasley had been taken off work status on July 8, 2013, and "[could not] *say whether or when she will be able to return to work at all.*" *Id.*, pp. 59-65 (emphasis added):

18

Kim: So, um, I will, since you're not able to come back to work and basically it would be, we would code the separation of employment *based on your not being able to return to work.*

Alisia: Ok so essentially because I have a medical condition *and I'm not able to return to work* you all are firing me?

Kim: Well, we can't uh, we don't have, as I told you since you're not covered under FMLA and there's not really a medical leave available for employees who've been here such a short time.

Alisia: Uh huh

Kim: The only other option was a personal leave and based on the needs of the position and they need to have someone in that role, *we can't, you know, just leave it open indefinitely.*

Alisia: Ok, I'm not asking you all to leave it open indefinitely as far as I know, I *may* be able to come back to work on Friday. I have a follow up visit with my doctor on Friday and *so I don't know if I'm going to be able to come back to work on Friday or if it's gonna' be a month from now,* but essentially it still falls back to that because I have a medical condition that's stopping me from coming to work today, then you all are firing me.

Kim: No, it's within the first 90 days of your employment and *you've indicated that you need to be out indefinitely and we are not in a position to hold the position open indefinitely.*

Alisia: I haven't said indefinitely though. *I haven't given you all a timeframe.* As I stated I go back to the doctor on Friday.

. . . Kim: Your email to me earlier, Alisia, was that *you didn't know when you'd be able to return to work.*

Alisia: *Correct* and I go back to the doctor on Friday.

Kim: *So I consider that to be indefinitely.*

Alisia: Well, no, I go back to the doctor on Friday and when I go back to the doctor on Friday, he can either release me *or he can extend it,* but one way or the other regardless if I'm within 90 days or if I'm there a year, you all have the right to let me go whenever because we are in an at-will state. But I'm not letting you all know that I'm, that I'm not gonna' come back at all. *All I'm saying is as of today my doctor has me off.* I go back to work on Monday, I'm sorry, I go back to the doctor on Friday

19

because he put me on medication to see if the medication has helped stabilize me. And *if* it has *then* I will be released to return to work.

Kim: Ok. So you, you go to the, doctor on Friday and then when would you be able to get back to us?

Alisia: *If* he releases me on Friday *then* I'll be back in the office on Monday. You know, just as I . . .

Kim: I mean what time, do you know what time you could give us a call, we could expect to hear back from you on Friday?

Alisia: Oh, yes. My appointment on Friday is at 11:00 a.m. And so right after I leave my doctor's appointment I can call you all and let you know.

Kim: Ok.

Alisia: What his decision is but if either way, you all are gonna' let me go the—versus I guess my thing is versus waiting until Friday and then telling me that we're gonna still separate you, then *I would prefer for you all to tell me that today so that way I know what my next course of action is versus waiting until Friday* and then telling me ["]well because you've missed this amount of time, we're gonna' let you go because you're within your 90 days.["]

Certainly by the time the EEOC *filed suit* the Commission was aware that (according to Beasley) on July 8, 2013, Dr. Allawala "took [Beasley] off work *for an indefinite period of time* . . . and that, as of [July 9, 2013], her doctor *had not provided her with a return to work date.*" *Complaint* (Docket No. 1) ¶ 15 (emphasis added). Thus, by the EEOC's own publicly stated interpretation of the ADA, at the time the EEOC filed suit it was aware Beasley had requested indefinite leave, *i.e.*, "meaning that an employee cannot say whether or when she will be able to return to work at all." According to the EEOC, itself, Beasley's request for indefinite leave constituted an undue hardship as a matter of law and AccentCare was not obligated to grant the request.

Fifth, in this regard, also utterly illogically the Commission's "cause" determination claims AccentCare "did not engage in the interactive process after

the Charging Party informed Respondent of her disability and requested a *reasonable* accommodation of unpaid leave." *Id.*, p. 91 (emphasis added). However, the requirement to engage in the "interactive process" is only triggered by an employee's request for a *reasonable* accommodation and, as just discussed, a request for indefinite leave *i.e.*, "meaning that an employee cannot say whether or when she will be able to return to work at all," is, as a matter of law, *not* a reasonable accommodation. *See Stafne v. Unicare Homes*, 266 F.3d 771, 774 (8th Cir. 2001) (employer had no duty to engage in interactive process where plaintiff presented no evidence that any accommodation would have enabled her to perform essential functions); *Soto-Ocasio v. Fed. Express Corp.*, 150 F.3d 14, 19 (1st Cir. 1998) ("[P]laintiff's assertion that [employer] failed to engage in 'meaningful' interaction . . . regarding reasonable accommodation is of no moment—or, more precisely, it puts the cart well before the horse—because no reasonable trier of fact could have found, on this record, that plaintiff . . . was capable of performing the duties of [her job], with or without reasonable accommodation."). Moreover, as a matter of law, absent admissible medical evidence that, after having (allegedly) been taken off work status by Dr. Allawala on July 8, 2013, Dr. Allawala returned Beasley to work status on July 12, 2013, as a matter of law the EEOC cannot demonstrate any harm from the alleged failure to engage in an "interactive process." *See Hester v. Williamson County,* 2013 WL 4482918, at 8 (W.D. Tex. Aug. 21, 2013).

Finally, as previously discussed, the EEOC's failure-to-accommodate theory is, necessarily, predicated on the contention that Beasley was taken off work status by Dr. Allawala on July 8, 2013, and was returned to duty by Dr. Allawala on July 12, 2013, but, the EEOC never had, does not have, and never will have any admissible medical evidence to support either of those two contentions.

**E. The EEOC Filed a Frivolous Suit, Without Evidentiary Or Legal Support:**

Little more needs to be said which has not previously been established:

➢ The lawsuit lacks *any* factual or legal support.

➢ The EEOC cannot even make out a *prima facie* case on either of its claims and, consequently, AccentCare is entitled to summary judgment.

➢ The theories of liability articulated by the EEOC are contrary to established precedent and the EEOC's own publicly stated "guidance."

As a matter of law, the lawsuit was unreasonable, frivolous, and without foundation. *See EEOC v. Hendrix Coll.*, 53 F.3d 209, 211 (8th Cir. 1995) (EEOC litigated age discrimination claim in bad faith); *EEOC v. Caribe Hilton Int'l*, 821 F.2d 74, 76 (1st Cir. 1987) (EEOC acted unreasonably and without foundation in bringing lawsuit).

**F. The EEOC Has Unreasonably *Continued* The Litigation After It Should Have Become Apparent From (1) Dr. Allawala's Records And (2) Beasley's Deposition, That No Factual Basis Existed For The EEOC's Claims:**

The EEOC has had several opportunities to correct its errors, fold its tents and stop what it put in motion, but has refused to do so.

First, clearly, when the EEOC finally obtained Dr. Allawala's original, unredacted records in late March of this year, the Commission knew or should have known that there was no admissible evidence to support Beasley's naked allegations either that Dr. Allawala had taken Beasley off work status on July 8, 2013, or had returned her to work on July 12, 2013.

Second, additionally, the EEOC likewise knew or should have known that the medical records contradicted Beasley in numerous material respects which destroyed her credibility as a witness, *e.g.*, no evidence (1) of an appointment having been scheduled or missed on June 26, 2013, as Beasley claimed (*id.*, p. 48); (2) of a medical appointment or any "test" having (on July 8, 2013) been scheduled for Tuesday, July 9, 2013, as Beasley had represented to AccentCare

22

in her July 8, 2013, email (*id.*, p. 52); (3) of any "test" having been scheduled by Dr. Allawala at any time (*id.*); (4) of any appointment *scheduled* for July 12, 2013; (5) of any examination conducted or session held on July 12, 2013. *Id.*, pp. 59-65. *See EEOC v. Caribe Hilton Int'l*, 821 F.2d at 76 (affirming award of attorney fees against the EEOC where district court found that EEOC unreasonably proceeded with litigation despite the Charging Party's lack of credibility):

> In the instant case, the district court found that Velez was not a credible witness, that he had been intransigent with his employer, and that his employer had attempted to accommodate him. Upon these facts, the district court found that EEOC's action was unreasonable and unfounded, and awarded attorney's fees to the defendants.

Finally, Beasley's lack of credibility was further demonstrated during her deposition in July (*id.*, pp. 178-198); yet, the EEOC has continued to prosecute the litigation. *See, e.g.*, *EEOC v. Peoplemark, Inc.*, 732 F.3d 584, 591-92 (6th Cir. 2013) (fee award against EEOC affirmed; when litigation discovery uncovered that a claim was groundless, the EEOC should have reassessed the claim and chosen not to pursue it); *EEOC v. TriCore Reference Labs.*, 493 Fed. App'x. 955, 961 (10th Cir. 2012) ("The EEOC continued to litigate the failure-to-accommodate and termination claims after it became clear there were no grounds upon which to proceed." $140,571.62 in defense attorney fees awarded against EEOC)); *EEOC v. Agro Distrib. LLC*, 555 F.3d at 473 (EEOC's continued litigation after Charging Party's deposition testimony revealed lack of valid ADA claim warranted $225,000 award of defense attorney fees).

## CONCLUSIONS AND REQUESTED RELIEF

For all of the foregoing reasons, Defendant's *Motion for Attorney Fees* should be, in all things, **GRANTED**.

Additionally, Defendant respectfully requests that the Court grant Defendant twenty-one (21) days from the date of the Court's *Order* in which for AccentCare to submit affidavits and supporting documents upon which to establish the amount of fees, expenses, and costs to be awarded. *See EEOC v. Global Horizons, Inc.*, 100 F. Supp. 3d at 1093 (after granting motion summary judgment and defense motion for attorney fees, granting the prevailing Defendant 30 days in which to submit a properly supported application to determine the amount of fees).

Respectfully Submitted,

**/s/ John L. Ross**
**JOHN L. ROSS**[17]
Texas State Bar No. 17303020
**CHANTEL L. LEE**
Texas State Bar No. 24081001
**THOMPSON, COE, COUSINS & IRONS, L.L.P.**
700 North Pearl Street, Suite 2500
Dallas, Texas 75201
Telephone:  (214) 871-8206 (Ross)
Telephone:  (214) 871-8242 (Lee)
Fax:             (214) 871-8209
Email:          jross@thompsoncoe.com
Email:          clee@thompsoncoe.com

**ATTORNEYS FOR DEFENDANT**

---

[17] Board Certified in Labor & Employment Law and Civil Trial Law by the Texas Board of Legal Specialization.

## <u>CERTIFICATE OF SERVICE</u>

Pursuant to *Fed. R. Civ. P.* 5(b)(2)(E) and (b)(3), I certify a true and correct copy of the foregoing document was filed electronically on the 16th day of September 2016. Thereby, through the electronic filing system, a copy of the foregoing document was served on Plaintiff's counsel of record.

**/s/ John L. Ross**
**JOHN L. ROSS**

25